(Decided January 11th, 1898).

---

CHARLES REIDEL *vs.* PHILADELPHIA, WIL-MINGTON AND BALTIMORE R. R. CO.

*Contributory Negligence—Injury to Trespasser on Railroad Company's Private Right of Way—Violation of Municipal Ordinance as to Speed of Trains.*

When a person is injured by a railroad train in a city which was running at a greater rate of speed than that allowed by municipal ordinance, the violation of the ordinance is not *per se* such negligence upon the part of the company as will afford a cause of action. It must be shown that the injury was caused by the unauthorized speed, without any direct or contributory negligence on the part of the plaintiff.

Plaintiff, on a dark evening, attempted to cross the tracks of the defendant company at a point where there was no public crossing, and where there were several parallel tracks. He passed from behind three rows of cars standing on side tracks and started across, and was at once caught between two tracks upon which trains were passing in opposite directions and was injured by one of them. *Held*, that although plaintiff testified that he looked and did not see either train approaching, yet, it is clear from the nearness of the trains that if he had made proper use of his senses, he must have seen or heard the trains or one of them, and that consequently he was guilty of such contributory negligence in attempting to cross the tracks as precludes a recovery.

Appeal from a judgment of the Circuit Court for Harford County (WATTERS, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ. (Dec. 1, 1897).

*Albert Constable*, (with whom were *James J. Archer* and *William F. Kurtz* on the brief), for the appellant.

*L. M. Haines* and *Thomas H. Robinson*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for injuries to the plaintiff alleged to have been caused by the negligence of the defendant Railroad Company on the evening of December 28th, 1891, at Wilmington, Del. The suit was commenced in the Circuit Court of Cecil County on the 5th December, 1894. On the 14th of January following, the declaration was filed. The case appears to have been continued by consent from term to term until the 25th March, 1897, when the plaintiff filed a suggestion and affidavit for removal, and the record was thereupon sent to the Circuit Court for Kent County. On the 20th of April following the defendant filed a suggestion for removal, and the record was accordingly sent to the Circuit Court for Harford County and was filed there on the 26th April, 1897, and the trial was commenced in that Court on the 8th June of the same year, and on the 11th of the same month the learned Judge below instructed the jury that there was no evidence in the case legally sufficient to entitle the plaintiff to recover. On the 23rd June judgment on the verdict was entered, and the same day the defendant appealed.

The sole question involved in this appeal is whether the jury were properly instructed to find a verdict for the defendant. We think the learned Judge below was quite right in taking the case from the jury.

The general principles which must govern the decision of this case are well settled in this State, and it is unnecessary, therefore, to look for authorities in other States, however interesting and instructive they may be. A number of those cited by the appellant, notably those reported in 89th, 107th and 175th Pa. State Rep., are cases which relate to

the principles which are well settled in reference to injuries inflicted by a railroad company at *public crossings.* Such adjudications have no application to the case before us, for when injured the plaintiff was, and is conceded to have been, a trespasser on the track of the defendant company, where it had "the exclusive right of way for the operation of its trains." *B. & O. R. R. Co.* v. *State, use Schroeder,* 69 Md. 555.

But inasmuch as the legal sufficiency of the evidence is questioned it will be necessary to examine it. Only two witnesses testify in regard to the facts of the accident, the plaintiff and the witness Woerner, who testified in his behalf. It appears that the injury complained of was received at Wilmington, in Delaware, while the plaintiff was in the act of crossing the tracks of the Philadelphia, Wilmington and Baltimore Railroad Company at the foot of Second street in that city. He was at the time of the injury and had been for some years employed by it as a night laborer at its round-house. According to his own testimony on the 28th December, 1891, he left his home in Wilmington about quarter before six o'clock in the evening for his work, passed along Second street in the same way he had always done during all the time he had worked for the company, and when he came near to the end of that street, which terminates at the railway of the defendant, there being no crossing there, he stopped and looked up and down the railroad to the right and left, but did not see or hear anything. He then walked towards the railroad and crossed the first three side tracks, and when he passed out from behind some freight cars on one of the side tracks, he again looked up and down the railroad, but neither saw nor heard anything. He then walked across the first main or southbound track, and was in the act of stepping on the northbound track when he saw a train approaching him on that track and going towards Philadelphia. When he first saw this train it was nearly upon him, or as he says about a car's length distant from him, and running at a speed, ac-

cording to his testimony, of from ten to twelve miles an hour.   Upon seeing this train he drew back to let it pass, and before he could escape another train running at a speed of twenty miles an hour appeared on the south-bound track, and he stood in the space between the two tracks trying to make himself "slim."   But he was knocked down and seriously injured—whether by the north or south-bound train he does not say.   It appears that both trains reached the spot where he was standing about the same time.   The night, he says, was cold and dark.   He heard no whistles or bells from either train.   However, he quali-fies this by saying he was too excited, and didn't know anything that was going on around him, which under the circumstances was but natural.   It appears from the testi-mony that quite a number of employees of the defendant were in the habit of walking across the tracks at the foot of Second street going to and returning from their work at the defendant's round-house—but this does not alter the fact that the plaintiff was a trespasser.   *Stebbing's case*, 62 Md. 517; *Allison's case*, 62 Md. 487.   It has been sug-gested that the plaintiff was an employee of the defendant, and if so, he might be subjected to the rule pertaining to the rights of fellow-servants, and for this reason, if for no other, he could not recover; but this defence was not relied on by the defendant and we will not, therefore, consider it.

The remaining testimony relating to the facts of the ac-cident is that of Anthon Woerner, a fellow workman of the plaintiff, who, according to his testimony, must have reached the end of Second street about the time the plain-tiff started to cross the tracks.   He was late in getting to his work—the hour he was required to be there being six o'clock.   He also was in the habit of crossing at the foot of Second street, and on this occasion he said he ran and tried to get over before the north-bound train came up, be-cause he had heard the six o'clock whistle, but there was a car there and it was impossible for him to cross.   He heard the whistle of the north-bound train before he got

to the railroad tracks, and about the time he got there he heard the whistle of the south-bound train.   He was fortunately too late, in his opinion, to attempt to cross before the north-bound train came up.   On cross-examination he said that as soon as he got to the corner he heard the south-bound train coming in, and it was coming very fast, in his opinion at the rate of 12 to 15 miles an hour.   Some one called his attention to a man who was on the track and in danger, whereupon he looked through some cars standing standing on the side tracks, and saw, as he says, " only the man by his legs and his dinner kettle."   This witness confirms the plaintiff's testimony that the trains met where the plaintiff was standing—the one going south running as he supposed about twice as fast as the one going north, the speed of the latter being six or eight miles an hour.   He thinks the south-bound train was three hundred or three hundred and fifty-feet up the track when it whistled, but he appears to have heard the train coming as soon as he arrived at the crossing.   Both of these witnesses were examined and cross-examined at much length, but we have given enough of their testimony to show that notwithstanding the defendant appears to have given the ordinary signals, yet it was guilty of negligence in violating the ordinance of the city of Wilmington by running, on this occasion, one, if not both of its trains, at a speed greater than was allowed by ordinance within the city limits.

   It is settled law that in all such cases as this that the violation of a municipal ordinance regulating the speed of trains within certain limits is not *per se* such negligence as will afford a right of action.   The person injured "must have been in a position to entitle him to the protection that the ordinance was designed to afford, and he must show how and under what circumstances the duty arose to him personally, and how it was violated by the negligence of the defendant to his injury."   *Stebbing's case, supra.*   It is quite immaterial to the case of the plaintiff that the defendant company was guilty of violating the ordinance " unless it be

shown that the injury complained of was occasioned by such unauthorized speed of the train, without any direct contributory negligence on the part of the plaintiff himself." If it appears that he knew or could have known by the exercise of his powers of observation either by sight or hearing of the near approach of the trains in time to get out of the way of danger and failed to do so, he has no right of action, notwithstanding the violation by the defendant of the ordinance.    This rule was applied by CHIEF JUSTICE ALVEY in the case just cited in clear and forcible language. And that same eminent Judge in the more recent case of the *B. & O. R. R.* v. *State, use of Schroeder*, 69 Md. 554, in delivering the opinion of this Court, again reiterated and enforced the rule applicable to trespassers who are injured on the tracks of a railroad.    In that case it is said : " It is true the train was running at a much higher rate of speed than that allowed by the ordinance of the city, and in this, it is conceded, there was negligence.    But this disregard of the ordinance, and consequent act of negligence on the part of the defendant did not excuse or in any way justify the glaring act of negligence on the part of the deceased. That has been ruled in many cases and is now the settled law." The conduct which we characterized in the case just cited as a glaring act of negligence, consisted in walking in open day light on the track of the railroad, facing an approaching train.    But in *Bacon's case*, 58 Md. 485, the opinion of the Court having also been delivered by CHIEF JUDGE ALVEY, the facts were more like the present case.    There the time of the accident was night as here and the persons injured were, as here also, trespassers, and as we have said were there assuming all the risks of the perilous position in which they had voluntarily placed themselves, there being no duty imposed upon the defendant's employee on the train to keep a lookout for them.    Under these circumstances we said " the night being dark they must have known that they could not depend for their safety upon being seen by those in charge of the train, beyond the reflection of the head-

light. They knew perfectly well that their safety depended alone upon the use of their senses and the exercise of a proper degree of caution. It is difficult to suppose they did not see the approaching train with its glaring headlight confronting them in time to enable them to step from the track. If the deceased did see or hear the approaching train in time and failed to get out of the way he was certainly guilty of the grossest negligence, and if he did not see or hear the approaching train, it must have been because he did not use his senses for his protection, and he was therefore guilty of negligence and that negligence directly contributed to the cause of his death."

Now what are the facts of this case? As we have seen the plaintiff on a dark evening in December attempted to cross the defendant's tracks at a place where the moment he stepped upon them he became in contemplation of law a trespasser. He says there were three rows of cars standing on the side tracks, and he went behind those cars, and stood there and looked up and down to see if he could see a train, and seeing nothing he walked across the two rails of the south-bound track, and just as he put his foot on the north-bound track he saw the train for Baltimore about a car's length distant from him; he stepped back into the space between the two tracks and was then between the two trains—both going by him at the same time. He was then in a most dangerous position, but he was there by his own fault. It is apparent from the proximity of the trains to the plaintiff as he put his foot upon the rails of the north-bound track, that if he had made proper use of his senses he must have seen or heard the trains. He says he looked and did not see, but it is impossible for him not to have seen or heard one train or the other—for they were there, and if he did not see or hear them it is his misfortune. " If he did not see or hear the approaching train, it must have been because he did not use his senses." *Bacon's case.* It seems to us the conduct of the plaintiff was reckless. His knowledge of the locality should have persuaded him, and would

have, we think, induced any prudent man to have waited until he could by looking, or if he could not see, by listening to convince himself that no trains were approaching.   If it be conceded that it be possible that he did not and could not see the approaching trains, yet that he did not hear them is incredible.   He must have heard but he did not heed.   The plaintiff like others who were in the habit of crossing at the place had become so familiar with its dangers that they no longer had any effect upon him.   It appears that one of the witnesses was in the habit of getting over the cars which stood on the side tracks and thus obstructed his way across the defendant's road.   Familiarity with danger has, in this case, had its usual effect—and the plaintiff had the misfortune of being added to the long list of those who become reckless of their own safety by daily contact with perils, which in others would inspire fear, caution and prudence.

In the view we have taken the remaining exceptions, based upon the refusal to admit the testimony of the witness Moreland, become unimportant, for our conclusion is based upon the conceded fact that the defendant was guilty of negligence in running its train at a greater speed than allowed by the ordinance—and, as we understand it, the rejected testimony was offered to show that there was such a violation of the ordinance.

*Judgment affirmed with costs.*

(Decided January 12th, 1898).