# WM. WALKER, INFANT, BY NEXT FRIEND, *vs.* ELIZABETH M. B. MARYE.

*Highways and Streets—Obstruction in Side Walk—Liability of Abutting Owner.*

The owner of a house in a city is not liable in damages to a person who falls over a water-pipe and cup, appurtenant to the house, which pipe and cup projected a few inches above the sidewalk in front of the house, when it is not shown that the obstruction was placed in the highway by the owner of the house or that he had the right to remove it.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER JJ.

*Thomas Mackenzie* and *C. Hopewell Warner*, for the appellant.

An encroachment upon the public highway is a nuisance. *P. W. & B. Ry. Co.* v. *State*, 20 Md. 157; *N. C. Ry. Co.* v. *Mayor*, 21 Md. 93; *Ullman* v. *Charles St. Ave. Co.*, 83 Md. 130. The public have the right to the free and unobstructed use of a highway. *West. Un. Tel. Co.* v. *State*, 82 Md. 310.

The person who places a nuisance in a public street is liable for injuries resulting therefrom. *Gunther* v. *Dranbauer*, 86 Md. 1; *Flynn* v. *Canton*, 40 Md. 326. Or one who comes into possession of a property with a nuisance upon it is likewise liable. *Irwin* v. *Sprigg*, 6 Gill, 220.

Nuisance created by one, title passing afterwards to another—before suit there must be, ordinarily, either first, notice to remove it or second, some act done to continue it. *Walter* v. *Co. Coms.*, 35 Md. 385. The Court cites *Moore* v. *Browne*, Dyer, 319, where it was held that a widow who continued to use a pipe constructed by her husband to divert water, was guilty of a continuance. Receiving rent for property with a nuisance upon it, makes the owner liable whether in or out of

possession.   *Owings* v. *Jones,* 9 Md. 108; *Albert* v. *State,* 66 Md. 325; *Smith* v. *Walsh,* 92 Md. 518; *Murray* v. *McShane,* 52 Md. 225.

Two things necessary to support the action, an obstruction in the road, by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff. *Butterfield* v. *Forrester,* 11 East. 60; *Murray* v. *McShane,* 52 Md. 227.

*Arthur W. Machen* and *Arthur W. Machen, Jr.,* for the appellee.

It is well settled in this State and elsewhere that the duty of maintaining in safe condition the sidewalk of a public street, as well as all other parts of the highway, rests upon the municipality and not upon the abutter.   For injuries caused by a defective highway the remedy is against the city and not against the abutting owner.   *Flynn* v. *Canton Co.,* 40 Md. 312.   This case has been followed in sister States, and its doctrine logically applied to obstructions in the sidewalk other than those created by the elements—*e. g.,* to a plank used as a curbstone and projecting above the sidewalk.   *Sneeson* v. *Kupper,* 21 R. I. 560.   And to a rotten plank in a board walk.   *Baustian* v. *Young,* 152 Mo. 317, 325.   And to other defects.   *Betz* v. *Limingi,* 46 La. Ann. 1113; *Keokuk* v. *Ind. Dist.,* 53 Iowa, 532; *Rochester* v. *Campbell,* 123 N. Y. 402; 10 L. R. A. 393.   In this last case the charter of the city of Rochester provided that every lot owner in said city should keep the sidewalks adjoining his premises in good repair, and that if he failed so to do the city should have the right to repair at his expense.   A party who stepped into a hole in a sidewalk sued the city and recovered for damages so received.   The city thereupon sued the abutter to recover the amount which it had thus been compelled to pay.   The defendant demurred to the complaint, which set forth substantially the above facts; and the Court sustained the demurrer, on the ground that the duty of maintaining sidewalks in repair rested exclusively upon the municipality, which had the supervision and supreme control of its streets.   The pro-

vision in the charter above referred to was assimilated to the or-. dinance construed in the *Flynn case*, and did not render the delinquent lot owner liable for damages sustained by a trav-. eler on the highway, but only for the cost of the necessary repairs. The Court quoted at length with approval from the. opinion in *Flynn* v. *Canton Co.*, and added, with reference to the provision in the charter, "It cannot be supposed that the Legislature intended to impose an absolute duty to repair upon an individual who could not exercise it except under the control of another," that is, the municipal authority.

It only remains to distinguish certain classes of cases relied upon by the other side. (*a*) Any person, who personally, or by his agents, creates a nuisance or source of danger in a public highway is, of course, liable for any damages which may. be sustained in consequence by any person lawfully using the highway. His liability is for a positive act of malfeasance and would attach whether or not he is the abutting owner. He is liable as a wrongdoer, and the ownership of the adjoining property certainly does not aggravate his culpability. To this class of cases belongs *Owings* v. *Jones*, 9 Md. 108. There an abutting owner in violation of a city ordinance constructed a vault under the highway in front of his premises, and was of course held liable to a party who was injured by falling into. the same.

As a corollary to this proposition it is held where a person— and here again it is immaterial whether he be the abutting owner or not—himself creates what is likely to become a source of danger to those passing along the highway; he is bound to prevent it from actually becoming a nuisance, and if he neglect to do so, is liable to any one injured in consequence. By his own act he has created a nuisance *in posse*, and at his peril must see that no nuisance *in esse* arises. That he has let the property to a tenant, or for any other reason has no control over it, is no excuse; he has only himself to blame. In. such cases, the defendant is liable by reason, primarily, of positive acts on his part, and not because of a mere non-feasance. So, also, a party who has not created a nuisance may

become liable therefor if he continue it. But this declaration
.does not allege that the defendants " continued " or " main-
:tained " the supposed nuisance, but that they " failed. to re-
.move " it..

" A failure to remove a nuisance created by another does
not alone constitute a continuance of it. There must be some
active participation in the continuance of it, or some positive
.act evidencing its adoption. \* \* \* The rule is not that
the nuisance continues, but that the person continues it."
*Walter* v. *Co. Comrs. of Wicomico Co.*, 35 Md: 385, 392; see
also *Hughes* v. *Mung*, 3 H. & McH. 441.

. These cases also hold that evidence of user of the alleged
nuisance by the defendant is insufficient to prove a *continuance*
thereof on his part. Obviously, therefore, this declaration does
not disclose sufficient facts to hold the defendant. liable for
" maintaining " or " continuing " the supposed nuisance. For
the maintaining or continuing an alleged nuisance is as much
a positive act as its original creation, and here only a negative
is asserted—that the defendants did not remove, etc. *C. &
O. Canal Co.* v. *Co. Comrs.*, 57 Md. 201, is a peculiar case,
where a canal company, which was empowered to cut through
public highways where intersected by its canal, was *by its
charter* under a corresponding obligation to construct and
maintain bridges over its water-way at such crossings. For
its failure to keep a bridge in good repair the company was
liable. It was a simple case of non-performance of a *statutory*
duty.

(*b*) We fully recognize that every land owner is under obli-
gation to keep his property in such condition as not to endan-
ger the public in their use of an adjoining highway, and, if he
fail to do so, must respond in damages to the injured party.
A case of this sort is *Murray* v. *McShane*, 52 Md. 217, where
a householder was held bound to repair a dilipidated wall
fronting on the street. The principle of these cases, of which
*Murray* v. *McShane* is an illustration, is that an owner of prop-
erty is bound so to repair his own premises, over which he
and not the city has control, as that the safety of traffic upon

a neighboring highway be not impaired; and, the reason of the doctrine being existence of control on the part of the land owner and absence of control on the part of the city, it can only be applied where the land owner has control. *Cessante ratione cessat ipsa lex. Chapman v. Fylde Water-works Co.* (1894), 2 Q. B. 599.

The case just cited affords a neat illustration of this limitation upon the doctrine. There, under statutory authority, a water company, at the request of an abutting owner, placed in the street a stop-cock for the purpose of regulating the supply of water for the latter's house. The stop-cock was protected by a guard-box let into the pavement. The hinge of the cover of this box having fallen out of repair, it projected above the pavement, causing the plaintiff to stumble and sustain injuries, to recover for which he sued the water company. By its charter, the latter was given power to remove and replace the pavements in public streets and highways for the purpose of repairing its pipes and connections. It was contended on behalf of the defendant, the water company, that the cause of the mischief existed for the benefit of the abutter, belonged to him, and was appurtenant to his house, and that therefore he, and not the water company was liable. But the Court held that even assuming the title to the guard-box in question to be in the abutting owner—and the matter of ownership was a disputed point—yet the householder could not be held liable, since he had no right to meddle with the pavement of the public street, even for the purpose of removing an obstruction imbedded therein. The surface of the highway is sacred, and cannot be tampered with without special authority. On the other hand, the water company, which was performing a function that in Baltimore is entrusted to the municipality, had by its charter complete authority to dig up the highway in order to repair its connections, and therefore had such control of the alleged nuisance as to make it not unreasonable to fasten upon it a duty to repair.

Apply this principle to the facts of this case. Under the laws in force in Baltimore City, who has power to break up

the street for purpose of repairing water connections ? Surely not the abutting owner. City Code of 1893, Art. 48, secs. 157 E G (page 1418), subjects to heavy fines any person who *"under any pretext or any cause whatever"* digs up or interferes with any stone or brick pavement in any public street without a permit from the Mayor and City Engineer. So the new charter (Acts of 1898, ch. 123), sec. 86, gives the City Engineer "control" of the streets; and secs. 904–6 of the same Act impose severe penalties upon any person tampering with "any water pipe, * * * stop-cock, or other thing used for supplying the city of Baltimore with water." The exclusive control of the Water Board over pipes and connections in public streets and their duty to repair the same is fully set forth in City Code (1893), Art. 54, sec. 25 *et seq.*

All of these provisions go to emphasize the common law principle that only the public authorities can interfere with the surface of a public street, and that the defendants had no right to tamper with this stop-cock or with the pavement of St. Paul street, and that therefore they cannot be held liable in this action. The plaintiff's remedy, if any he has, is against the city, which alone, by its several departments and agencies, had control of the pavement of St. Paul street and of the water connections and pipes. *Chapman* v. *Fylde Water-works Co.,* *supra,* shows further that the allegation which is contained in the first, but not in the second count, that the water pipe in question belonged to the defendants, cannot avail the plaintiff. The fact of a person having property imbedded in the pavement does not authorize him to interfere with the street.

The cases as to unguarded areaways, of which *Irwin* v. *Sprigg,* 6 Gill, 200, is an example, do not conflict with this principle. There, an owner of a house was held liable to a person injured through his failure to fence or guard an open areaway in the public street, which was in front of and connected with his premises, and which was intended to furnish light for the basement of his house.

When the land owner is permitted by the city to construct an areaway in the public street, the excavation comes under

the dominion and control of him and his assigns quite as fully as if it were outside the highway lines. The area is practically part of the house, the householder's use of it being exclusive of the public. We submit that it is upon this fact that the area cases turn—upon the fact that the area necessarily ceases, virtually, to be part of the highway. This is shown by the very fact that the abutting owner is *allowed* to exclude the public from the area by a railing or otherwise. It cannot be *part of the highway in use* if the public can be lawfully excluded therefrom.

Possibly a change has been made by the city authorities in the grade of the pavement. At any rate, the projection is not due, so far as appears, to any defect of the apparatus. In this aspect of the case, *Moore* v. *Lambeth Water-works Co.*, L. R., 17 Q. B. D. 462, is in point. There, a water-works company, which was bound by its charter to keep its pipes, plugs and connections in good repair, and which had authority to make the necessary interference with the public streets and highways, laid down a fire-plug in an asphalt pavement of a public street. Originally, the top of the plug was level with the surrounding pavement, but in the process of time the asphalt was worn down by traffic so that the plug protruded. A traveller, for an injury sustained in consequence, brought suit against the water-works company. The duty of repairing the streets rested upon the highway authority, a distinct body. The Court held that, the plug itself being in good condition, the defendant company had discharged its charter obligations to keep its connections in repair, and was consequently not liable.

The declaration is also bad because, while it seeks to hold the defendants liable as grantees of a nuisance, it yet contains no averment of a request to the defendants to remove the same, and a failure to comply. Yet all the authorities agree that the grantee of land upon which is a nuisance is not liable therefor, in the absence of some positive act of continuance, until a failure to remove after request. *Penruddock's case*, 5 Coke, 101; *Hughes* v. *Mung*, 3 H. & McH. 441; *Walter* v.

*Co. Comrs. of Wicomico Co.*, 35 Md. 385; *P. & R. R. R.* v. *Smith*, 64 Fed. Rep. 679.

FOWLER, J., delivered the opinion of the Court.

While walking along the sidewalk on Saint Paul street in the city of Baltimore, William Walker, who is alleged to be an infant under the age of twenty-one years, stumbled and fell over what is described as "a water-pipe and cup" which extended above the level of the pavement some three or four inches. This alleged obstruction happened to be immediately in front of the house known as No. 325 St. Paul st., which is owned by the defendant, Elizabeth M. B. Marye, jointly with other persons. This is an action brought by Walker against all the joint owners or tenants in common, to recover damages for the injuries resulting from the fall above described ; but it appears that only the defendant, Mrs. Marye, has been summoned—the other two defendants having been returned *non sunt*. The defendant who was summoned demurred to the declaration. This demurrer was sustained and there was a judgment thereon for the defendant with costs. From this judgment the plaintiff has appealed.

The declaration consists of two counts. The material averments of the first count are that the defendants are the owners and possessors of the dwelling house No. 325 St. Paul street ; that on the foot pavement thereof, and as appurtenant thereto and belonging to the defendants was a round iron pipe and cup which extended above the level of said footway some three or four inches ; that said water-pipe obstructed and interfered with the free and unobstructed use by the public of said pavement, *which is a public highway in the city of Baltimore ;* that the plaintiff though using ordinary care while passing over said pavement was injured by coming in contact with said water-pipe ; that such injuries were directly caused by the negligence of the defendants in not removing said nuisance, &c., &c.

The second avers, in addition to the facts set forth in the first, that when the defendants came into possession of the

property they found the alleged nuisance "existing upon said premises" and have rented the said premises with the said nuisance in use upon it and as appurtenant thereto, &c. From this recital of the averments of the declaration it is apparent that the object of this suit is to recover damages for injuries resulting from an obstruction or nuisance existing *in one of the highways of* the city of Baltimore. It is not alleged that the defendant placed or caused this nuisance to be placed in the highway, but the allegation is that she is the owner of the house in front of which the plaintiff was injured, and that the water-pipe which caused the injury is in the pavement in front of her house. It is true it is alleged in the first count that this pipe is appurtenant to the house and belongs to the defendant. And in the second that the house was rented with said nuisance in use upon it and as appurtenant thereto. Without stopping to inquire whether under any circumstances a demurrer can be held to admit these averments—especially that which avers that the property was rented with a nuisance *appurtenant* to it, we will briefly consider the main and controlling question presented. That question is, admitting that the alleged obstruction exists in *the highway* in front of the defendant's house, whether under the facts alleged she is under any duty to the plaintiff to remove such obstruction or remedy the alleged dangerous condition of the sidewalk?

The answer to this question, we think, is found in the leading case of *Flynn* v. *The Canton Company,* 40 Md. 317. In that case it appears that the plaintiff "slipped and fell upon a sheet of ice on the pavement or sidewalk of O'Donnell street * * * and was permanently disabled ; that she was walking with ordinary care and could not see the ice because of a slight covering of snow ;" that the pavement was in front of the premises of the defendant, who had been repeatedly notified of the dangerous condition of the sidewalk and to remove the ice and snow which had accumulated and remained there until the plaintiff was injured. It was held that the defendant was not liable. The late JUDGE MILLER, who delivered the opinion of the Court, said that "the nuisance, if such it be,

was not caused or created by *the act of the party sued.* The ice, the occasion of the injury, *was not on the property of the defendants*, nor was it placed on the pavement through the instrumentality or agency on their part." And so in the case at bar. It is nowhere alleged in the *narr.* that the pipe was placed *in the highway* by the defendant. And even if it be conceded that the averments in regard to the *use of the* pipe and of the fact that it *is appurtenant* to the house, are well pleaded and therefore admitted by the demurrer, we are unable to see how the plaintiff's case is benefited thereby. In the case just cited the sidewalk was in the same sense used with and appurtenant to the house, but in spite of this it was declared the plaintiff could not recover.

But there is another averment which it is supposed differentiates this case from *Flynn* v. *Canton.* It is this—that the pipe in question in addition to being in use with and appurtenant to the defendant's house, *belongs* to her. How it belongs to her, how she became the owner of a pipe located in the highway, is not alleged, but assuming that such an averment is sufficiently definite and precise to gratify the rules of good pleading, what does it amount to, when, as we are bound to do, we take it in connection with and subject to the other facts set forth in the *narr?* And when we consider the fact of ownership of a pipe located in a highway in some way and by some person unknown, we know of no decided case, nor indeed any principle of law, which would impose upon the defendant the *duty* of repair unless she has the right to do so. It is not even alleged that she has this right. On the contrary the averment in both counts that the alleged nuisance is in the highway excludes the existence of any such duty or right, unless imposed or conferred by statute, or in some other legal way. It would be, of course, the height of injustice to hold the defendant liable for the condition of the pipe over which she has no control. What we have here said, it is apparent, is not inconsistent with the cases like *Murray* v. *McShane,* 52 Md. 217, where it was held that the owner must keep his property in such condition as not to endanger the public use of an adjoining highway.

The fact that the owner has control makes him and not the city liable in damages.　In the case of *Chapman* v. *Fylde Water-works Co.*, L. R. 2 Q. B. (1894) 599, Lord Esher said: "I will assume that the service pipe and the stop-cock in it, and the cover or guard by which it was protected were all of them the property of the householder.　The question seems to me to be, who had the control of the apparatus so far as repairs were concerned.　*　*　*　The question is when the service pipe and apparatus connected therewith have been laid down, whether by the householder or the company, and the work has been completed by making the street good, who has any power to interfere with a public street for the purpose of doing anything to them afterwards?　The mere fact of a person having property laid down under a street does not authorize him to interfere with the street.　Assuming the apparatus to be the property of the householder, he has no power to break up the street unless an Act of Parliament had given him that power.　*　*　*　He has, therefore, no power to break up the street and consequently he cannot repair the apparatus. If so, it is idle to say that, because he has not done what he had no power to do, any person injured in consequence of its not being done can have an action against him."　We have thus quoted at length the language of his Lordship because it is so pertinent to the facts in the case we have before us.

The question here presented having been so clearly and elaborately considered in the case of *Flynn* v. *Canton, supra,* we deem it unnecessary to support our conclusion by any other citation of authorities or by any further consideration of the subject.

We have not considered and do not base our opinion on the proposition that it was necessary that all the *tort feasors* should be joined in this suit.

*Judgment affirmed.*

(Decided April 1st, 1902.)