The appeal in this case is from a judgment recovered by the equitable plaintiff against the appellant, for the fatal injury to her son, caused by the alleged negligent management of a locomotive and tender of the defendant company.
This is the third appeal in this case to this Court, the first and second being reported in 114 Md. 536, and 117 Md. 280, respectively. The opinions in those appeals fully considered the testimony, and stated the law applicable to the case; thus rendering it unnecessary for us to review the testimony, excepting where it differs from the former trials. The son of the equitable plaintiff, a boy of fourteen years of age, was, during daylight, run over and fatally injured, by the tender of a locomotive of the appellant, while he was fastened, by having his foot caught between the point of a switch and the rail of the tracks of the appellant. The engine was backing at a rate of two miles an hour along a side track, which was considerably curved, with no natural obstruction to the *Page 321 
view between the point where the engine was at the time the boy became fastened, and the point where he was injured, a distance of a block and a half. The boy was yelling and screaming and throwing himself up and around trying to loosen his foot. The place where he was caught was on the inside of the curve, and the place on the engine where the engineer was sitting, leaning out of the cab and looking in the direction in which he was backing, was the same side, or inside, of the curve. At the first trial the engineer and brakeman who were on the engine, testified that they were both looking in the direction in which they were backing, and did not see the boy until after he was struck. At the second trial the engineer, called by the plaintiff testified, that although he was looking in the direction he was backing, he did not and could not see the boy, because the tender, being between him and the direction in which he was running, cut off the view of all in front of it. At the last trial both the engineer and brakeman testified, that they did not and could not see the boy for the reason just stated, but that they did not hear his screams, and could not have heard them on account of a noise in the engine produced by the blower. There was other testimony to the effect, that when the blower is at work it makes such a noise it is not possible to hear sounds from without the engine. Therefore the appellant contends, from this testimony, it was a physical impossibility for them to have either seen or heard the boy, and not owing him any duty until they became aware of his danger, there was an insufficiency of proof to submit the case to the jury.
The appellant has asked this Court, although there are other exceptions contained in the record, to pass only on the question involving the liability, and for that reason we will only pass on that question.
In both former appeals this Court held, that the boy was a trespasser, and that the employees owed him no duty until they became aware of his presence on the tracks in a position of peril, but further held that there was sufficient evidence *Page 322 
from which the jury could find that they were aware of his presence in time to have averted the accident.
The Court said in 114 Md., at page 545, "Conceding the defendant's contention that the plaintiff must be regarded as having been on its track as a trespasser when he was injured and that therefore under our rule in Kehoes' Case, 83 Md. 434 (and subsequent cases), its employees in charge of the backing engine owed him no duty until they became aware of his presence on the track in a position of peril, we still think there was evidence in the case requiring the Court to send it to the jury.
"The plaintiff's witness Trump, whose testimony for the purpose of the present inquiry must be taken to be true, testified that the boy's foot was caught between the switch points and the rail when the engine was a block and a half away from him, and that he screamed and yelled and tried to pull his foot loose but was held fast until the tender ran over him. As the engine and tender approached him they moved at a rate of two miles an hour. Both the engineer and the brakeman, who were then on the engine, testified that they were looking back in the direction in which they were moving all the time and did not see the boy towards whom they were going until after the tender had passed over him. If those two witnesses told the truth, Trump could not have done so; but their evidence was not conclusive of the fact and the jury may not have believed them. The onus was undoubtedly upon the plaintiff in order to support her case to produce evidence sufficient to satisfy a reasonable jury that the defendant's agents were made aware of the presence of the boy ahead of them in a position of peril in time to have avoided injuring him, but she was not bound to establish the fact of the agent's knowledge of the boy's peril, by their own admission. She might prove it over their denial if she could satisfy the jury of the fact by competent evidence. Evidence that a person was present and looking at an object would ordinarily be regarded as a strongprima *Page 323 facie proof that he saw it. * * * The jury to whom the case was sent by the learned judge below were the proper parties to estimate and pass upon the weight of the whole testimony."
The inquiry now becomes whether the present record contains anything that renders the ruling in the former appeals inapplicable. If there was sufficient evidence to justify the jury in finding that the employees of the appellant were aware of the presence of the boy in time to have avoided striking him in the former trials, and we have so stated there was, the new testimony surely presents no reason for reversing that ruling. If the engineer had testified that he was employed about some other of his numerous duties on the engine, and was not looking forward the way he was running, and for that reason did not see the boy, another case would have been presented. For, since he owed no duty to be on the lookout for trespassers, negligence could not be inferred because he did not do so; but here he testified that he had his head out of the window looking forward going around a curve. A plot showing the extent of the curve was before the jury. And although he denied he saw or could see, we see no reason to change from the former ruling and say that his denial is final and conclusive, but are of the opinion that the case should have been left to the jury to find as a fact whether he was aware of the boy's presence.
We are not to be understood as extending to cases of this character, the ruling of this Court as applicable to cases occasioned by accidents on trolley lines through the streets of a city, where a company can be held liable for the failure of a motorman to use reasonable care in seeing a person in a position of danger. But merely declaring that in such a state of facts as this record discloses, the jury, under instructions from the Court, is the proper tribunal to determine whether the plaintiff has furnished facts to satisfy it that the agents of the company were aware of the danger in time to have avoided it. *Page 324 
It was argued by the counsel for the appellant, that if the testimony of the plaintiff's witness Trump, that he saw the boy caught in the switch, was eliminated from the case, that then there would be no evidence legally sufficient to be passed upon by the jury. To accomplish its elimination, they pointed out that there was a mark on the plat designated by Trump as the point at which he was standing at the time of the accident. Taking that as absolutely fixing the place where he was standing, a witness is produced who had made tests, and he testified, that standing at that point, and at different points up to thirty feet west of it, and any distance east, it was physically impossible to see the point where the accident occurred. The argument was that "where a witness' testimony is positively contradicted by the physical facts, neither the Court nor jury can be permitted to credit it." The fallacy of the reasoning is easily seen when we notice that, although Trump did mark the place on a plat handed him, the scale on the plot shows that point was over two hundred feet from the place of accident, whereas the witness testified that he was within fifteen or twenty feet of the accident. Although it was argued seriously we can not believe that anyone could hope to convince reasonable men that a witness is to be bound exactly to a point fixed by him at random on a scaled plot, and his positive testimony as to the same location is to be ignored. It must appear to any one reading the testimony that the mark was only the witness' attempt to fix on the plot a point he said was fifteen or twenty feet from another point. Could it be contended, that if the point of accident, as laid down on the plot had been pointed out to the witness, and he was told the scale of the plot, he would have located the place ten or more times further distant than he was at the same time testifying it was? For these reasons we think the judgment should be affirmed.
Judgment affirmed, with costs to the appellee. *Page 325