# HARRISON G. WARD

## *vs.*

# BALTIMORE AND OHIO RAILROAD COMPANY.

*Railways: freight cars; injury; trespassers; duty of railroad's employees.*

Where, without the invitation, express or implied, a person, by his voluntary, independent act, without the knowledge or permission of the railway company, enters upon a freight car standing on a siding, he is to be regarded as a trespasser. p. 287

Where, for the purpose of allowing a freight car to be unloaded by the consignee, a railway company leaves it standing upon a siding in front of a freight shed, and a person, without the invitation of the railway, either express or implied, and without its permission or knowledge, enters the car, and while in the act of leaving it is injured by other freight cars, which were shunted against the car, such person is not entitled to recover damages resulting from the accident, unless he can show that the railway's servants had knowledge of his peril in time to avoid the injury, and that they then failed to exert proper care to avoid the injury.                    p. 288

*Decided March 2nd, 1915.*

Appeal from the Circuit Court for Montgomery County. (PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Thomas W. Dawson* and *Alexander Kilgour,* for the appellant.

*James A. C. Bond* and *Francis Neal Parke,* for the appellee.

Pattison, J., delivered the opinion of the Court.

The suit in this case was brought to recover damages for personal injuries sustained by the appellant in consequence of the alleged negligence of the appellee.

On the morning of the 26th day of September, 1911, the appellant called at the station of the appellee company in Gaithersburg, Montgomery County, Maryland, and inquired of its agent if an empty car which he had ordered a few days before, to be used by him in the shipment of straw, had arrived and was told by the agent that it had not. He then left the station on the north side of the railroad for the office of one Thomas I. Fulks, located on the south side of said road. His object, as he states, in going to the office of Fulks, a dealer in lime, fertilizer, etc., was to see him concerning some feature of a business transaction in which Fulks had sold him lime. On his way to said office he met Fulks going to his warehouse on the north side of the railroad, and therefore instead of going to the office he accompanied Fulks to his warehouse. The warehouse of Fulks is to the eastward of the station and fronts 90 feet on a switch or siding of the appellee's road, and is five feet and six inches from its right of way. At the time referred to above, there was a car of the appellee upon said siding in front of said warehouse containing fertilizer belonging to Fulks which was partially unloaded, but at such time no one was at work unloading it.

The servants or employees of Fulks who had been engaged in unloading it, had stopped work and had gone, for water, to a pump in a yard about thirty yards away. The car door was open and so was the door of the warehouse immediately opposite, and connecting the car with the warehouse was a board or gang-plank about eighteen inches or two feet in width, and something over six feet in length, one end of which rested upon the sill of the door of the warehouse and the other end upon the floor of the car at the open door. It was over this board or gang-plank that the employees of Fulks, by the use of trucks, carried the fertilizer from the car to the warehouse.

The appellant in his testimony stated that after transacting the aforesaid business with Fulks, and while still in the warehouse he saw through its open door the said car upon the siding and without anything being said by Fulks or himself, they walked from the warehouse into the car where they remained only about one-half minute, when they started to return over the said board or gang-plank to the warehouse. He further stated that just as Fulks, who preceded him, "took the last step off of the board or gang-board with one foot in the warehouse" a car came down the siding and struck the car they had just left, causing him to be thrown to the ground a distance of five or six feet, and that in the fall he sustained severe and painful injuries to the wrist and that his leg was bruised and his cheek was cut. In leaving the car he did not look for an approaching car upon the siding, had he done so there seems to have been nothing to prevent him from seeing it, but as it was he did not know of its approach until the collision occurred, and that as a result of the fall he "did not know anything for quite a while thereafter." As he described it, "I was walking right out, I did not see any car at all. The first thing I knew I was down." The car that collided with the one in front of the warehouse was one of four that had been shunted upon the siding.

The conductor who was placed upon the stand by the plaintiff, appellant here, stated that at the time he shunted the cars mentioned he "made an effort to see whether or not Fulks was unloading any cars, by going down the track as far as the company's station office, which was about eight or nine car lengths from Fulks' warehouse, and he saw a car down there and did not see it being unloaded, but did not intend that the car when shunted should go down the track that far, but intended to stop them just about clear of the crossing, seven or eight car lengths east of the warehouse. That it was his duty when freight cars were being unloaded by people to notify those unloading cars on the track and that he notified all that he saw that day. That the accident happened when four cars were cut off of the train at the east of the switch and shunted west and it was intended for them to stop down by the crossing, just clear of it. The brakeman did not get the cars stopped in time and they went on down the track and ran against the car of Fulks, * * *. That the cars did not stop at the crossing because the brakeman did not have them under control or from something or other, although the brakeman was an experienced man and the brakes were in proper condition, * * * the brakeman did not start to brake in time, but he could not say that this was due to the inefficiency of the brakeman, as it is a matter of judgment where to shut off.

The brakeman was also called to the stand by the plaintiff and he testified that "two of the cars he was riding and switching were loaded and two empties. The loaded cars were with fertilizers and very heavy. The grade was about 75 feet to a mile, a good grade; was moving with the grade. Was sitting on third car from the front end with two cars ahead." He further testified that he "did not see anybody unloading the car in front of the warehouse, nor in front of car or around it," and he "did not see the plaintiff on the gang-plank, nor Mr. Fulks. * * * When the cars struck the car opposite the warehouse they were not moving over three or four miles an hour; if they were moving that fast."

Just why and for what purpose the appellant went into the car of the appellee does not satisfactorily appear from the record. He was not invited by any one, and only remained in the car for about one-half minute and while there said or did nothing so far as the record discloses. He in his testimony says "I walked in there with him (Fulks) with the intention that if he did not intend to reload that car, that I would. I was almost sure of getting the car if he did not want it. I always have to go in a car to see if it suits before I load it with stray; you have to have a certain size car or you cannot get the rates on it." Notwithstanding what he says as to his purpose in going into the car, he never said anything to Mr. Fulks either before or while in the car as to whether he was going to reload it, nor did he make any allusion to the fact that he wanted the car. He further attempted to explain why he entered the car by saying he wished to ascertain the size of it, but he thereafter admitted that the dimensions of the car were shown upon the outside and not on the inside. But whatever might have been his object or purpose in entering the car he certainly was not allured or induced to do so by the defendant or its agents. He had been told by the agent at the station that there was no car at that time for him; and it was not suggested to him by the defendant and he was not induced by it, to enter upon the property in search of a car that would suit his purposes and one that he could get if it was not to be reloaded by the party then using it.

His entrance upon the property of the defendant was not upon its invitation either expressed or implied, but it was his voluntary independent act done without the permission or knowledge of the defendant so far as the record discloses, and therefore under the well-established law of this State, the appellant must for the purposes of this suit be treated as a trespasser upon the property of the appellee and to entitle him to recover damages resulting from the injury sustained, he must show (1) That the appellee's servants had knowledge of his peril; (2) That they had knowledge in time to avoid

the injury; (3) That they then failed to exert proper care to avoid the injury. *W. Md. R. R. Co.* v. *Kehoe,* 83 Md. 434; *W. Va. Cen. R. R. Co.* v. *Fuller,* 96 Md. 666.

The evidence of the conductor and brakeman offered on behalf of the plaintiff which has been hereinbefore very fully set out, clearly shows that the peril of the plaintiff was never known to the servants of the defendant and consequently they could not have avoided the injury sustained by him.

The Court below at the request of the defendant granted a prayer at the conclusion of the plaintiff's evidence, instructing the jury that under the pleading and evidence in this case, the plaintiff has offered no evidence legally sufficient to entitle him to recover. This is the only exception before us, and from what we have said as to the effect of the testimony offered, the Court was correct in its ruling upon this prayer.

The declaration contained two counts, to the second of which a demurrer was sustained.

As was said by this Court in *Maenner* v. *Carroll,* 46 Md. 212, "to constitute a good cause of action in a case of this nature, there should be stated a right on the part of the plaintiff, a duty on the part of the defendant in respect to that right, and a breach of that duty by the defendant whereby the plaintiff has sustained injury." These requisites are not found in the second count of the declaration. All the facts alleged in such count, may be true and yet the plaintiff would have no right of action against the defendant. The mere fact that the plaintiff was upon the gang-plank and sustained the injury complained of, does not give him the right to recover against the defendant. It must be shown by the declaration that he was rightfully there, or if not rightfully there that the defendant by proper care could have avoided injury to him after it discovered his peril, which is not shown by this count of the declaration. *Maenner* v. *Carroll, supra.*

Finding no errors in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed, appellants to pay the costs.*