# NATHANIEL JACKSON *v.* PENNSYLVANIA RAILROAD COMPANY.

[No. 88, October Term, 1938.]

2

*Decided January 11th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Sigmund Levin* and *Joseph O. Kaiser,* with whom were *C. Morton Goldstein* and *Thomas J. Kenney* on the brief, for the appellant.

*Charles T. LeViness, 3rd,* with whom were *Edward E. Hargest, Jr.,* and *Alexius McGlannan, 3rd,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The single question on this appeal is whether the trial court is in error in sustaining the demurrer to an amended declaration, and, on the refusal of the plaintiff further to amend, in entering a judgment of *non pros.* against the plaintiff in favor of the defendant for costs. The plaintiff, Nathaniel Jackson, was injured on the night of the 29th of June, 1937, while walking on the railway tracks of the defendant, The Pennsylvania Railroad Company, near a street crossing. The scene of the accident is in Baltimore County, where the steam railway of the defendant is laid and maintained upon its right of way, which extends through Turner Station on its route to Sparrow's Point. The right of way of the defendant borders on the lateral margin of the public thoroughfare called Dundalk Avenue or Main Street, which is crossed at various points by parallel streets. One of these intersecting streets and public crossings is known as Soller's Point Road. Apparently between Turner Station and the street crossing at Soller's Point Road, and about 150 feet from the crossing and parallel with it, a clearly defined and well worn foot path crosses the railway right of way and tracks of the defendant, and is used by pedestrians to cross from one side of Dundalk Avenue or Main Street to the other. The immediate vicinity and neighborhood of the foot path is thickly settled, and improved by houses, stores and shops. It is further alleged that for many past years the residents of the neighborhood, including the plaintiff, and the public generally, have habitually used the foot path in crossing the street from one side to the other at their convenience, openly, constantly, and notoriously, as the defendant, its agents, servants, and employees, knew or ought to have known, but had never in any way objected to such user, which had clearly marked and defined the path across the right of way and its tracks, and through the growth on either side of the railway property, so that the path was clearly visible for a comparatively long distance in every direction. These averments clearly indicate, as was stated in

4

argument, that the tracks were of the open country "T" rail type.

The declaration further alleges that, for a long time before the injury complained of, all trains of the defendant gave warning notice of their approach to this path by the blowing of a whistle or the ringing of a bell, and had, upon all cars and locomotives which approached the path, lights and a lookout to give warning, to pedestrians who were using the path, of the approach of such cars and trains.

It is charged that about ten minutes after nine, on the night of June 29th, while the plaintiff was carefully and prudently crossing the railway tracks along the described path, the defendant's servants were engaged in backing a railway engine and its caboose toward the foot path. It is then alleged that the plaintiff "was suddenly struck down and dragged by the said engine and caboose, which were, as aforesaid, in reverse, and backing in a silent and stealthy manner and at a slow rate of speed toward Soller's Point Road, and which were then and there being operated and controlled by the agents, servants or employees of said defendant, and being so done in a careless and negligent manner in that, although it was the duty of the said defendant, its agents, servants and employees, in moving and operating its said engine and caboose upon the rails and tracks at and near the said pathway, and in approaching the same, to use ordinary and reasonable care, and to move its said cars and trains in a reasonably careful and prudent manner, and to anticipate the presence of persons who might be traversing said pathway upon its right of way, the said defendant did nevertheless fail to give reasonably adequate and timely warning either by whistle, bell, lights, lookout or other signal, such as the public and the community, including the plaintiff, were accustomed and entitled to have; that as a result of being so struck down and dragged aforesaid the plaintiff received serious, painful and permanent injuries * * * and the plaintiff avers that all of his injuries and damages as aforesaid were caused

solely through and by reason of the carelessness and negligence of the defendant, its agents, servants and employees, and without any negligence on the part of him, the said plaintiff, directly thereunto contributing."

In order for a plaintiff to have a right of action in negligence against a defendant there must exist a duty which is owed by the defendant to the plaintiff to observe that care which the law prescribes in the given circumstances, a *breach* by the defendant of that duty, *damages* and *injury* suffered by the plaintiff as the demonstrable effect of the breach of duty. Negligence is, therefore, the absence of care according to the circumstances. So, an action for negligence involves the certain and definite allegation of the circumstances, and the failure of the defendant to exercise the care which the law required according to these circumstances. If the allegations should be insufficient to show a duty breached which was the efficient cause of the injury, the declaration is bad on demurrer. *Frisch v. Baltimore,* 156 Md. 310, 315, 144 A. 478; *Phelps v. Howard County,* 117 Md. 175, 82 A. 1058; *Neighbors v. Leatherman,* 116 Md. 484, 82 A. 152; *Anne Arundel County v. Carr,* 111 Md. 141, 148, 73 A. 668; *Jeter v. Schwind Quarry Co.,* 97 Md. 696, 699, 55 A. 366; *Walker v. Marye,* 94 Md. 762, 51 A. 1054; *Kennedy v. Cumberland,* 65 Md. 514, 9 A. 234; *Philadelphia, B. & W. R. Co. v. Allen,* 102 Md. 110, 62 A. 246; *Zier v. Chesapeake Beach Rwy. Co.,* 98 Md. 35, 39, 56A. 385.

It is plain from these allegations that the foot path mentioned is not a public way but one in whose use as a pathway across its railway tracks the defendant has acquiesced. Some courts hold that if the railway company licenses or acquiesces in the use of its tracks or premises by others, it must exercise reasonable care not only to avoid injuring these users after they are discovered to be in danger, but also to keep a careful lookout to discover and avoid injury to all who may be expected to be upon their right of way or premises. It is this doctrine which the plaintiff in the action on this appeal invokes and asks to have enforced. There are weighty reasons in support

of the doctrine, but the more cogent reasons are opposed. The doctrine is impracticable and not in harmony with the principles of law which control such cases. As is further expressed in 3 *Elliott on Railroads* (3rd Ed.), sec. 1788, p. 832: "If it be true, as generally conceded, that a licensee takes his license subject to the 'concomitant risks and perils,' he must surely take it subject to the use of the road in the manner in which it was used at the time the license was granted, that is, subject to the running of trains in the ordinary manner without any special reference to him, and he occupies, therefore, to this extent, substantially the position of a trespasser. In other words the company owes him no duty of active vigilance to specially look out for and protect him, for he must know that his license is subject to all risks incident to the use of the track by the company in the same manner in which it was used at the time the license was granted and that the company assumes no new obligation or duty. Indeed, it seems to us that he is bound to know that a railroad company has no power to license the use of its tracks in such a manner as to interfere with its duties to the public as a common carrier. If it owes a duty to every bare licensee to run its trains with reference to him, to look out for him, to signal, to slow up and, perhaps to stop wherever it has reason to expect him, it can do little else, its trains cannot be on time and the traveling public must suffer. It certainly is not obliged to patrol its tracks from one end to the other to keep off trespassers and to prevent those who use it longitudinally from claiming a license on the ground of acquiesence. It seems to us, therefore, that the only duty which it owes to such persons, whether they are trespassers or bare licensees, is not to wilfully or wantonly injure them but to use reasonable care to avoid injury to them after their danger is discovered."

The decisions of this court are uniformly in accord with this statement of the law. In *Balto.. & O. R. Co. v. State, use of Allison,* 62 Md. 479, it was argued that there was a path along the track, and people were in the habit

of using it for the purpose of passing down to and from Fort Avenue, and beyond, so that it had become such a thoroughfare that the company, in the use of its right of way for its engines and cars, were under obligation to use it with special reference to this use by the public, and to exercise special caution in passing over the road to avoid injuring any one happening to be on the track. The court rejected this contention and stated the rule at pages 486-488 of the report:

"In reply, the appellant contends, that from the mere permissive user of the path by the side of the track, the public has acquired no right to use it, and where there is no right there can be no obligation beyond that which ordinarily attaches to the use of engines and trains upon the appellant's private property; and this would seem to be accepted law by the large weight of authority. The mere user of such a path for foot passage, without objection on the part of the company, cannot be construed into an invitation to so use it, and the use of such a perilous way of travel in the day time could hardly justify an expectation that anybody could be so foolhardy as to attempt it at night, at which time the evidence is it was never used in that way.

"A right of way of a railroad company is the exclusive property of such company, upon which no unauthorized person has the right to be, and any one who travels upon such right of way, as a footway, and not for any business with the railroad, is a wrong-doer and a trespasser; and the mere acquiesence of the railroad company in such user does not give the right to use it, or create any obligation for especial protection. *Illinois Central R. Co. v. Godfrey,* 71 Ill. 500. Whenever persons undertake to use the railroad in such case as a footway they are supposed to do so with a full understanding of its dangers, and as assuming the risk of all its perils. 71 Ill. 500; *McClaren v. Indianapolis & Vincennes R. R. Co.,* 83 Ind. 319; *Jeffersonville, Madison & Indianapolis R. R. Co. v. Goldsmith,* 47 Ind. 43; *Railroad Co. v. Houston,* 95 U.S. 702, and *Baltimore & P. Railroad Co. v. Jones,* 95 U.S.

442; 1 *Thompson on Negligence,* 453, 459; *Morrissey v. Eastern Railroad Co.,* 126 Mass. 377. In *Maenner v. Carroll,* 46 Md. 212, which was a suit for injury received by falling into an excavation which had been dug on the private property of the defendant, over which persons were in the habit of passing, but which was not a public highway, this court declared the same principle as controlling, and adopted the language of the court in *Hounsell v. Smyth,* 7 C.B.N.S., 731, that in such case, 'one who uses the waste has no right to complain of an excavation he finds there. He must take the permission with its concomitant conditions, and, it may be, perils.' *Binks, Admr., v. South Yorkshire Railway & River Dun Co.,* 3 B. & S., 244; *Bolch v. Smith,* 7 H. & N., 736, and *Gautiel, Admr., v. Egerton,* L.R., 2 C.P., 371, are cited in support of the law thus endorsed."

So, in *Price v. Philadelphia, W. & B. R. R. Co.,* 84 Md. 506, 514, 36 A. 263, 265, it is said: "We think it very clear, upon authority and upon reason, that any one who undertakes to use the right of way of a railroad, either as a convenient footway for himself or for any business disconnected with the railroad, is a wrongdoer and a trespasser, who is to be regarded as having a full understanding of its insecurity, and as accepting the risk of all its dangers."

Again, in *Reidel v. Philadelphia, W. & B. R. Co.,* 87 Md. 153, 156, 39 A. 507, 508, the court held: "It appears from the testimony that quite a number of employees of the defendant were in the habit of walking across the tracks at the foot of Second Street going to and returning from their work at the defendant's roundhouse, but this does not alter the fact that the plaintiff was a trespasser."

Accordingly, it is stated in *Balto. & O. R. Co. v. Welch,* 114 Md. 536, page 543, 80 A. 170, page 172, that "the mere acquiesence of the railroad company in such user does not give the right to use it or create any obligation for especial protection." See *Western Maryland Rwy. Co. v. Kehoe,* 83 Md. 434, 35 A. 90; *Chesapeake Beach Rwy.*

*Co. v. Donahue,* 107 Md. 119, 127, 68 A. 507; *Welch v. Balto. & O. R. Co.,* 117 Md. 280, 286, 83 A. 166; *Balto. & O. R. Co. v. State, use of Welch,* 120 Md. 319, 322, 87 A. 676; *Philadelphia & Baltimore C. R. Co. v. Holden,* 93 Md. 417, 425, 49 A. 625; *Balto. & O. R. Co. v. Walsh,* 142 Md. 230, 238-242, 120 A. 715.

The mere operation, on a railway company's private and exclusive right of way, between public crossings, of an engine and tender without lights or any signals given of its approach, is not negligence so far as a trespasser or bare licensee upon the right of way is concerned, although the time be night and the engine and tender be running backward. Such movements are the common incidents and dangers of railway operations. *State, use of Rickets, v. Balto. & O. R. Co.,* 69 Md. 494, 497-498, 16 A. 210; *Balto. & O. R. Co. v. State, use of Schroeder,* 69 Md. 551, 554-558, 16 A. 212; *Balto. & O. R. Co. v. State, use of Savington,* 71 Md. 590, 598-599, 18 A. 969; *Reidel v. Philadelphia, W. & B. R. Co.,* 87 Md. 153, 157, 158, 39 A. 507; *Philadelphia & B. C. R. Co. v. Holden,* 93 Md. 417, 423-426, 49 A. 625; *Ace Ward v. Balto. & O. R. R. Co.,* 125 Md. 283, 287, 93 A. 513.

In the present case, the plaintiff did not go upon the defendant's right of way by an express or implied invitation. He had no business of any kind with the carrier, and was engaged in appropriating for his own convenience private property whose railway tracks and their use were a danger signal to him and a warning of the perils he might encounter. By the clear and consistent decisions of this court he was a trespasser, or at most a bare licensee, and the frequency of his trespass or use and of that of others did not impose any greater duty than that due to a bare licensee. It is so held in *Balto. & O. R. Co. v. Walsh,* 142 Md. 230, 242, 120 A. 715. The duty did not begin until the operators of the engine and tender knew of the plaintiff's presence on the track. *After* such knowledge, the operators were bound to use the care and diligence of ordinarily prudent men in similar circumstances to prevent an injury to the plaintiff.

*Supra,* and *Anderson v. Balto. & O. R. Co.,* 144 Md. 571, 573, 125 A. 393. Hence, under the allegations of the declaration in this case no *duty* of the defendant and its servants to the plaintiff could arise until the defendant's servants had knowledge that the plaintiff was in a position of peril in time for them to prevent an injury by the exercise of due care. This knowledge is the gist of the plaintiff's right of action. Nevertheless, there is no allegation that any of the defendant's servants knew of the plaintiff's peril in time to arrest an injury, and thereafter failed to exert proper care to avoid the injury. *Chesapeake Beach R. Co. v. Donahue,* 107 Md. 119, 127, 68 A. 507; *Balto. & O. R. Co., v. Welch,* 114 Md. 536, 545, 548, 80 A. 170; *Balto. & O. R. Co. v. State, use of Welch,* 120 Md. 319, 322, 87 A. 676; *Carr v. United Rwys. & El. Co.,* 135 Md. 307, 311, 108 A. 872.

Neither do the facts set forth in the declaration make it a necessary inference that the acts of alleged negligence charged were *after* the knowledge by the servants of the defendant of the plaintiff's peril. The theory of the plaintiff is that the duty and its omission were with reference to certain signals of approach, to the private footway, and to the absence of lights on the engine and tender, which were all to be observed in *anticipation* of the presence of persons who *might* be traversing said pathway upon defendant's right of way. The plaintiff rests his right of action upon a failure of the defendant to do things which, as has been seen, it was under no duty to the plaintiff to perform. The men in charge of the engine and train were not bound to stop or even to lessen the speed of their equipment, unless they saw there was danger of a collision with a person upon the track who had no opportunity to escape, or whom they saw in a use of the footway which would probably result in a collision, unless they could avert it in the exercise of reasonable care and diligence according to the circumstances. *Supra; Balto. & O. R. Co. v. State, use of Savington,* 71 Md. 590, 598, 599, 18 A. 969.

The tacit acquiesence in the habitual user of a foot path by persons coming on the railway property without leave may, if sufficiently prolonged, amount to a user by permission in a particular manner, but this would simply make the trespasser a mere or bare licensee, who acquires no right, and has simply become entitled to no more than a permission to use the subject of the license as he finds it, with all its concomitant conditions and perils. As heretofore observed, the duty of the owner of the property to the bare licensee with respect to the licensee's use of the property is not covertly to alter the property so as to create a peril which is not obvious and expectable to the user; and, as in the case of the trespasser, the licensor, who is aware that a licensee is actually there, is bound to take reasonable care to prevent injury to him after knowledge of the impending danger; and not to inflict wilful or wanton injury. 23 *Halsbury's Laws of England,* secs. 859, 860, pp. 609, 610; *Elliott on Railroads* (3rd Ed.), sec. 1789, p. 834; 52 *C.J.,* sec. 1772 (d), pp. 177, 178. It does not appear that the defendant was aware that the plaintiff was using the pathway on the night of the injury. There is alleged no change in the premises and its use.

The declaration, therefore, fails to disclose any breach of duty which was owed by the defendant to the plaintiff, and this defect makes the declaration bad on demurrer. *Brinkmeyer v. United Iron & Metal Co.,* 168 Md. 149, 177 A. 171; *State v. Machen,* 164 Md. 579, 581-586, 165 A. 695; 5 *Elliott on Railroads* (3rd. Ed.), secs. 2695, 2696.

The *Restatement of the Law of Torts,* vol. 2, sec. 334, imposes a greater degree of care upon the owner than is enforced by the decisions of this court. The quotation in this opinion from *Elliott on Railroads, supra,* presents the reasons for the position frequently taken by this court. The use of a private foot path crossing over a steam railway right of way and its rails and ballasted tracks arising above the level of the surface of the right of way, creates a restriction in the operation of the rail-

way which is not conducive to the performance of its function as a public carrier. Acquiesence in such use does not create a right, but a revocable naked gratuitous license which may reasonably be said to be enjoyed according to its kind, subject to the qualification that the licensee accept the permission with its accompanying conditions and perils, and with no responsibility on the part of the licensor for the safety of the licensee, which does not grow out of the owner's negligence or that of his servants employed in the use and management of the premises. In other respects, the peril of the customary movement and operation of locomotive engines, cars, and trains on the railway tracks, and over the footway habitually used by the licensee and others, at a definite point, without interference and to the knowledge of the owner but with no actual permission, must be held to be assumed by the beneficiary as incident to the permission given.

For the reasons given the action of the court in sustaining the demurrer to the declaration will be sustained, and it becomes unnecessary for the court to consider whether the facts alleged show the plaintiff to have been guilty of contributory negligence. *East Brooklyn Box Co. v. Nudling,* 96 Md. 390, 392, 54 A. 132; *State, use of Dodson v. Baltimore etc. R. Co.,* 77 Md. 489, 29 A. 865.

*Judgment affirmed, with costs.*