# MORDECAI ZIPUS

*vs.*

# THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE CITY.

*Personal Injuries—Child Struck by Street Car—Evidence as to Injuries—Hospital Records—Res Gestæ—Re-examination of Witness—Measure of Damages—Loss of Parent's Time—Earning Capacity—Testimony as Distinguished from Evidence—Unavoidable Accident.*

In an action for injuries to the hand of plaintiff's infant child, a question asked of the child's sister, whether the child has "the use of her hand now," while improper if its purpose was to elicit an expression of opinion from one not qualified, was proper if intended to elicit a statement of a fact, from one who had daily opportunity and occasion to see the child's condition.
p. 301

The refusal to permit a witness to answer a question is not reversible error when evidence upon the same point was subsequently given by another witness and admitted without objection.
p. 302

The record of a hospital case, appearing in the hospital records with those of other cases, is inadmissible, when the witness offering it is unable to say by whom the record was made. p. 302

In an action for injuries to a child, testimony by her mother as to conversations with various physicians who, at one time or another, attended the child, some of the conversations having taken place a year and a half or two years after the accident, is not admissible as *res gestæ.*
p. 302

Testimony as to plaintiff's loss of time while looking after his injured child was properly excluded, such loss not being one of the elements of damage for which recovery was sought.
p. 303

A considerable amount of latitude is entrusted to the trial
court as to what may be proper matters for re-examination, and
an objection that the questions then asked served the purpose
of leading questions, and went to the extent of giving evidence
more favorable to the defendant than that previously given, is
not ground for reversal, if there is nothing to show an abuse
of the trial court's discretion, and the supposed discrepancies
in the statements of the witness on the two occasions were so
slight and immaterial that they could not have produced an inju-
rious effect upon the jury.                          p. 305

In an action for injuries to plaintiff's minor child, an instruc-
tion that plaintiff may recover "for such probable loss" as he
may sustain by diminution in the child's ability to render serv-
ice to plaintiff up to her arrival at twenty-one years of age,
and "such probable diminution in her earning capacity" as the
jury may find to be the result of the injuries, is misleading and
erroneous, as permitting the jury to speculate as to the probable
loss of the service of the child and also allowing a recovery for
diminished earning capacity.                          p. 304

In an action on account of an injury to plaintiff's minor child,
there can be no recovery for plaintiff's loss of time as a result
of the injury to the child.                          p. 305

There being nothing in the record in regard to a suit by the
child herself on account of such injury, except that such a suit
had been brought, and a conclusion reached, and nothing in the
evidence to show how it was disposed of, there was no occasion
for an instruction that the jury were not to be influenced by
the disposition made of such suit, and it was properly refused.

p. 305

An instruction that the jury must be satisfied by a preponder-
ance of the testimony was not erroneous as using the word "tes-
timony" instead of "evidence" if it clearly appears that the
former word was used in the sense of the latter.          p. 305

In an action for the injury to a child struck by a trolley car,
it was proper to instruct the jury that "the law makes no unrea-
sonable demand and that it will not consider the defendant as
guilty of negligence in failing to take precautions which in the
opinion of the jury no man of ordinary prudence would have
taken under the circumstances."                          p. 305

It was proper to instruct that if the jury find that the child came from behind a wagon and attempted to cross the street from behind said wagon, in such close proximity to the car that the motorman, by the exercise of ordinary care, could not have either seen the child or have stopped the car in time to have avoided the accident, then their verdict must be for the defendant.                                    p. 305

*Decided December 9th, 1919.*

Appeal from the Court of Common Pleas of Baltimore City (STANTON, J.).

The following prayers were among those submitted:

*Defendant's Second Prayer*—The Court instructs the jury that there can be no recovery in this action unless the jury find from the evidence, that the plaintiff has affirmatively shown by a fair preponderance of testimony, that the accident was caused through the negligence of the defendant, and the jury are instructed, in determining whether or not the defendant was guilty of negligence, that the law makes no unreasonable demand, and that it will not consider the defendant as guilty of negligence in failing to take precautions which in the opinion of the jury no man of ordinary prudence would have taken under the circumstances. (*Granted.*)

*Defendant's Third Prayer*—The Court instructs the jury that if they find from the evidence that the infant plaintiff either walked or ran from behind a westbound wagon on Pratt street and attempted to cross the street from behind said wagon in such close proximity to the street car that the motorman by the exercise of ordinary care could not have either seen the child or have stopped the car in time to have avoided the accident, then their verdict must be for the defendant. (*Granted.*)

*Defendant's Fourth Prayer*—The Court instructs the jury that if they find from the evidence that the infant plaintiff came from behind a westbound wagon on Pratt street, and

either walked or ran into the side of the street car, and that the motorman by the exercise of ordinary care could not have stopped the car in time to prevent the infant from coming in contact with it after he saw or by the exercise of ordinary care might have seen the infant child in a position of danger, that then the verdict must be for the defendant.   (*Granted.*)

*Defendant's Fifth Prayer*—The Court instructs the jury that if they find from the evidence that the parents of the infant plaintiff were negligent in permitting a child of such tender years as not to possess discretion to avoid danger, to be upon the public highway in charge of another child, if they so find, and also find that the child so in charge of said infant plaintiff did not properly guard said infant, and further find that Pratt street is a public thoroughfare in the City of Baltimore, and that the cars pass along said Pratt street constantly, and that the said child was liable to be hurt in said street when there either in charge of one not possessed of sufficient discretion to guard said child properly or in charge of one who failed so to guard said child properly, if the jury so find, then their verdict must be for the defendant, unless they further find that the consequence of such negligence could have been avoided by the use of ordinary care on the part of the defendant or its agents.   (*Granted.*)

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Jacob J. H. Mitnick,* with whom was *Louis Mitnick* on the brief, for the appellant.

*Albert R. Stuart* and *J. Pembroke Thom,* with whom was *Walter V. Harrison* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In 1914 Gertrude Zipus was about three or four years of age.   One morning in August of that year, about 11 o'clock

in the forenoon she was on East Pratt street playing on the pavement in front of her home, and in charge of her sister Rosie, who was then about eleven years old. The mother of these two children had gone across the street to a neighboring grocery, and while Rosie's back was turned Gertrude started to cross the street, and was struck by an east bound car of the United Railways and Electric Company, and two fingers on one hand were badly mangled and cut.

This accident gave rise to two actions, one begun by or in the name of Gertrude Zipus for injury done to her, and the other by Mordecai Zipus, the father of the child. With the first of these actions this Court is not now concerned.

The present case is the suit brought by the father for his damage in the loss of the service of his daughter, between the present time and the time when she shall become twenty-one years of age; for the amounts expended by him for the medical services consequent upon the injury to the child, and in the testimony, though it is not alleged as a ground of damages in the declaration, the loss of time given by the plaintiff to the care of and attention bestowed on his young daughter.

The case was tried before the Court and jury in the Court of Common Pleas, and a verdict and judgment rendered in favor of the defendant company, from which judgment this appeal has been taken.

The record contains eleven bills of exception; ten of these relate to rulings of the Court upon the evidence, and the remaining one to the action of the Court upon the several prayers presented to the Court.

The first of these exceptions was taken to the refusal by the Court to allow Rosie Zipus to answer the question: "Has she the use of her hand now?" An answer to this question might have been either to elicit the knowledge of the witness as to a fact or call for an expression of an opinion. If the latter was the purpose it would have been clearly inadmissible since Rosie Zipus had not been qualified to give an expression of opinion merely. On the other hand it would have

been entirely proper to have drawn from this witness a state-
ment of the fact as to how far she could use her hand, par-
ticularly when it is borne in mind that she was a member of
.the same household and had daily opportunity and occasion
to see the condition of her sister.   Assuming that it was the
purpose of the question to bring out evidence of the fact, the
refusal to permit the witness to answer did not amount to
reversible error in as much as the evidence upon the same
point was subsequently given by Dr. Chambers and was ad-
·mitted without objection.

The second and third bills of exception may be considered
together.   These were to the offering in evidence by Dr. C.
S. Lentz the record of the case during the time Gertrude
Zipus was undergoing treatment at the Hopkins Hospital.
The record in question was not one which had been made by
the witness, nor was he able to tell by whom it was made,
whether a student or a physician in the hospital.   He only
knew that among the records in the hospital this particular
one appeared, together with a large number of other records
in the same volume.   This falls short of the ruling thus far
universally observed by this Court as to the requirements for
making such a record admissible, nor can the exclusion of it
have operated in any way to the injury of the plaintiff, since
all of that evidence was admitted without objection, and in
much better form, by Dr. Chambers.

The fourth exception was reserved during the testimony
of Rebecca Zipus, the mother of the child, as to conversations
had with various physicians who, at one time or another,
were attending upon the child.   No fault can be found with
the action of the Court in striking out this evidence.   It was
clearly hearsay evidence, and its relation to the ground of
action set out in the declaration too remote to have been
properly considered by the jury.   The plaintiff contends for
its admission as constituting a part of the *res gestae.*   Some
of the testimony in question was with regard to the state-
ments made a year and a half or two years after the accident,

and the rule of *res gestae* has never been so stretched in this State as to make testimony of this description admissible.

The fifth exception was reserved to the striking out of some testimony of the father, the plaintiff in this case, as to his having given some of his time to his injured daughter, and that loss of time is claimed as one of the elements of damage for which under the testimony in this case recovery is sought. It was not an element of damage under the allegations of the declaration, and the weight of authority is against such an item of damage for which recovery can be had.   8 *R. C. L.* 474; note, 10 Ann. Cas. 288.

The sixth, seventh, eighth and ninth bills of exception all relate to testimony previously given by the witness James B. Smith at some former trial or hearing connected with the same accident.   The ground of objection as stated in the plaintiff's brief was that the questions served the purpose of leading questions, and went to the extent of giving evidence more favorable to the defendant than that previously given. These questions all came up on the re-examination of the witness.   A considerable amount of latitude is necessarily entrusted to the trial Court as to what may or may not be proper matters for re-examination, and in the present instance there is nothing to show any abuse by the trial Court of the discretion necessarily reposed in it, and the supposed discrepancies between the statements of the witness upon the two occasions are so slight and immaterial that it is impossible to conceive that they could produce any injurious effect upon the jury, to the extent of making the Court's action prejudicial error so as to warrant this Court in reversing the judgment.

The tenth exception is founded upon a question also asked upon re-direct examination by the defendant of one of its own witnesses, relating to the width of Pratt street between the curb and the cartrack.   So far as this may have been material it had already been covered in the testimony previously given and, therefore, no valid ground of objection is

to be found with the action of the trial Court in admitting the evidence.

The remaining exception deals solely with the question of prayers. There was a considerable amount of contradiction in the testimony offered by the plaintiff and that adduced by the defendant. The evidence was amply sufficient to require the submission of the case to the jury and, therefore, the ruling of the Court in refusing the defendant's "A" prayer was entirely correct.

The first prayer of the plaintiff is marked by the Court "granted as modified," while the brief of the appellant is to the effect that there was no modification made in the prayer. This prayer asks a recovery for the elements of damages as they appear in the declaration, but it goes further and is more favorable to the plaintiff than any rule heretofore laid down, in that it permits the jury, upon obtaining certain facts therein referred to, a wide latitude for speculation, when it uses the language that the plaintiff may recover "for such probable loss as the plaintiff may sustain by reason of the diminution in the ability of the child to render service to the plaintiff up to the time when she shall become twenty-one years of age, by reason of said injuries * * * and such probable diminution in her earning capacity up to the time when she shall arrive at the age of twenty-one years, as they shall find to be the result of such injuries." This is the suit of the father of the girl, yet by this prayer the Court permitted the jury to speculate as to the *probable* loss of the service of the child to the father, and also to allow a recovery for diminished earning capacity. This combination, in such language as that quoted above, might have well tended to mislead a jury and, therefore, the granting of this prayer gave to the plaintiff father more than he was entitled to, but no exception having been taken by the defendant to this prayer there can of course be no reversal of the judgment on that account.

By the second prayer of the plaintiff, which was refused, the element of damage to the father, by reason of his loss of time as the result of the injury to his child, is the predominant element. This has been somewhat considered when dealing with one of the exceptions to the testimony, and it is but fair to say that there is quite a diversity of decision as to whether this is or is not a proper element of damage for which a parent can recover, but according to the best reasoned cases and the fact that in no previous case in this State has this Court ever sanctioned the propriety of such an allowance of damage, the refusal of this prayer must be held to be proper.

The third prayer of the plaintiff, which was refused, was one to the effect that the case of the child against the said defendant and its disposition were not before them in the case which they were trying, and that they were not to be influenced by a disposition of that case. The record nowhere shows anything in regard to the case of the child, except that such a suit had been brought, and that a conclusion of it had been reached, but how or in what manner reached there is nothing in the evidence to disclose and, therefore, there was no occasion for any prayer of this nature and its refusal was proper.

The first and second prayers of the defendant both contained propositions relating to the burden of proof in regard to which the jury are told that they must be satisfied by a preponderance of the testimony. This it is argued is an entirely different thing from the preponderance of the evidence. It is of course true that the words "testimony" and "evidence" are not synonymous:

"The term evidence is the more comprehensive word and includes testimony which latter strictly speaking means only the evidence which comes from living witnesses who testify orally, but in common language the two words are frequently used synonymously." 3 *Words & Phrases,* 1st Series, 2523. "Where from an inspection of the entire bill of exceptions

it is obvious that the word 'testimony' was used with reference to the evidence and as synonymous with evidence, it may be accorded such extended signification." 2 *Words & Phrases,* 2nd Series, 357.   No one can read this prayer who listened to the testimony, or read it as contained in the record, without being fully satisfied that the two words were used synonymously.

The latter clause of the defendant's second prayer will be found fully in accord with the rule laid down in the *Carneal case,* 110 Md. 211.

The defendant's third prayer deals with the degree of care required of the motorman of the trolley car by which the plaintiff's daughter was injured.   This prayer is substantially the same, so far as the principle of law is concerned, with the defendant's third prayer in the *Carneal case,* and the defendant's second prayer, *Sullivan* v. *Smith,* 123 Md. 553, and the granting of it was, therefore, entirely proper.

The same applies to the fourth and fifth prayers of the defendant.

Taken as a whole, therefore, this case was submitted to the jury under circumstances more favorable even than the plaintiff was entitled to, and of which he can of course not be heard to complain, and the verdict rendered in favor of the defendant will, therefore, be sustained.

*Judgment affirmed, with costs.*