# STATE OF MARYLAND, Use of Belle M. Hamel, et al.

## vs.

# GLEN ECHO PARK COMPANY.

### *Roller Coaster—Contributory Negligence.*

One killed by falling from a roller coaster, while standing in the car, in disregard of printed admonitions, which he had read, and of spoken warnings, *held* to be guilty of contributory negligence.                                          pp. 530-532

The doctrine of last clear chance *held* not to apply so as to impose liability on the proprietor of a roller coaster for the death of one who fell from the car as a result of his negligence in standing therein.                                          p. 533

*Decided January 12th, 1921.*

Appeal from the Circuit Court for Montgomery County (Peter and Worthington, JJ.).

The cause was argued before Boyd, C. J., Thomas, Pattison, Stockbridge, Adkins, and Offutt, JJ.

*Wilton J. Lambert* and *William F. Prettyman*, with whom were *Talbott & Prettyman* on the brief, for the appellant.

*Robert B. Peter* and *Bowie F. Waters*, for the appellee.

Stockbridge, J., delivered the opinion of the court.

This suit was brought in the name of the State under Lord Campbell's Act, for the benefit of the widow and children of J. Joseph Hamel, who was injured at a pleasure resort known as Glen Echo Park. The accident occurred on the 23rd June, 1918, and the deceased died on the following day.

The judgment of the Circuit Court for Montgomery County, where the case was tried, was in favor of the defendant, as the result of granting two prayers offered by the defendant at the close of the testimony. Those prayers were

in substance: (1) that there was no legally sufficient evidence that the defendant had been guilty of negligence, and (2) that J. Joseph Hamel by his own negligence directly contributed to the happening of the injury complained of.

The testimony offered showed that on June 23rd Mr. Hamel, with his wife, two children and the child of a neighbor, went to Glen Echo Park for an outing. Arriving there, the party first took a ride on the flying horses, and from there the deceased, in company with Irene Kelley, the child of the neighbor previously referred to, went to the roller coaster, or gravity railroad as it is sometimes called, and Mr. Hamel having purchased tickets for the ride, they passed through the gate to a platform, along which the cars ran and came to a stop to receive its passengers. It seems to have filled quickly, and the last persons to get into it were Mr. Hamel and his young companion.

The only real conflict in the evidence is between the description of the accident given by Irene Kelley, who says that the car was at rest when Mr. Hamel put her on board, while witnesses on the part of the defendant state positively that the car was in motion. The little girl found a seat between two ladies, who occupied a seat in the middle of the car, while Mr. Hamel sat upon the arm of the seat. There is no direct testimony whether all of the seats in the car were occupied or not, but a reasonable inference from the fact of Mr. Hamel taking the position he did is that all of the seats were taken.

In the car, and at various places about the station from which the car was started, were signs which read: "Don't stand up," "Don't stand in the car," "Warning, Wait until the car stops before leaving," "Keep your hands inside the car," "Sit down," "Don't stand up," "Keep your limbs inside the car." That Mr. Hamel saw these signs there can be no question, as it is testified without contradiction that one person at least, who was standing near him, heard him reading them.

The car when loaded was started by a man called a "star-ter," who gave it a push which carried it some ten or fifteen feet, where another man was stationed who likewise con-tinued the pushing process until by means of a mechanical contrivance the car automatically caught a chain, which drew it up a slight incline to the apex, where the chain was re-leased, and from that point on the car was run entirely by gravity. The entire length of the track was a little over nineteen hundred feet, and the time occupied for it to make its trip up-grade and down-grade, and around the curves, was a minute and a half, which will give some idea of the speed of the car.

There was also uncontradicted testimony to the effect that the starter, and one or possibly two other employees, called out to Mr. Hamel to sit down, and to each of these he replied that he was all right. The same advice was given him by one or more fellow passengers in the car. After the car had proceeded on its course some nine hundred feet and when rounding a curve, which was out of sight from any of the employees of the defendant, Mr. Hamel was thrown from the car and sustained the injury from which he died on the following day.

No question is raised as to any imperfection in the car or the track, which could have occasioned the accident. On the contrary the testimony is that both had been inspected that morning, and found in good condition, and the only act claimed by the plaintiff as constituting negligence on the part of the defendant lay in permitting Mr. Hamel to ride with-out requiring him to take a seat upon one of the seats with which the car was equipped. There was no positive testi-mony tending to show that there were vacant seats in the car, but the warnings spoken, and those which Mr. Hamel read, brought home to him a knowledge of the regulations of the company which were designed, and could only have been intended, to safeguard passengers in the cars on this railway.

Under these circumstances it cannot be said that the de-fendant was guilty of negligence of a character to render it

liable in an action like the present. The facts already detailed do show conclusively that Mr. Hamel was guilty of contributory negligence.

In the brief of the appellant it is said:

> "It is fair to assume that he (meaning Mr. Hamel) was unaware of the nature of this device, and of the extreme danger to which he exposed himself."

This statement is not in accord with the adjudicated cases. Thus in the case of *Benedick* v. *Potts,* 88 Md. 52, a case having many points of similarity to the one under consideration, where a man was injured by a similar device at Tolchester, JUDGE McSHERRY said: "It is a perfectly well settled principle that to entitle a plaintiff to recover in an action of this kind he must show not only that he has sustained an injury, but that the defendant has been guilty of some negligence which produced that particular injury. The negligence alleged, and the injury sued for, must bear the relation of cause and effect. The concurrence of both and the nexus between them must exist to constitute a cause of action. * * * There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them."

And in the case of *Knottnerus* v. *Street Rwy. Co.,* 93 Mich. 348, it was said: "A roller coaster is not a snare or an explosive. It is in and of itself notice of its character and purpose. Its presence and operation involve no danger to those who keep away from it, nor does its enjoyment necessarily involve injury. * * * They (the proprietors of a pleasure resort) do not thereby become insurers of the person while in attendance upon the attraction, or responsible for the carelessness of the operators." This was a case of a balloon ascension at a pleasure resort where a pole fell and injured two of those watching the ascent.

There remains to be considered the ground of the action lastly relied on by the plaintiff, and which involves the doc-

trine known as the last clear chance. The rule of the English courts, and generally followed in this country, makes a personal injury the fault of him who has the last clear opportunity to prevent it. 11 *C. J.* 280, and note 29.

The party who has the last opportunity of avoiding an accident is not excused by the negligence of any one else. Many cases have attempted to give a definition of the last clear chance. As concise an one as any is that given in *McCormick* v. *Ottumwa Railway Co.,* 146 Iowa, 119, when that court said: "Where both parties are negligent the one that has the last clear opportunity to avoid the accident, notwithstanding the negligence of the other, is solely responsible for it, his negligence being deemed the direct and proximate cause of it."

Courts in order to do substantial justice have frequently invoked the doctrine and have carried it, it would seem, to the limit, and already there are signs of a swing of the pendulum in the opposite direction. Thus in two recent Oregon cases it is held that, in order to invoke the doctrine, the plaintiff must *plead and prove* that the defendant, after perceiving the danger and in time to avoid it, negligently refused to do so. This doctrine of the law, and the cases in which it is properly applicable, have been well considered in this State, and will be found clearly stated in the case of the *United Ry. Co.* v. *Kolken,* 114 Md. 160, where JUDGE THOMAS carefully reviews the subject.

In view of these various adjudications, and of the rule enunciated by JUDGE ALVEY in the *Md. Central R. R. Co.* v. *Neubeur,* 62 Md. 391, it seems clear that the doctrine of the last clear chance cannot properly be invoked in this case.

Finding no error in the rulings of the Circuit Court for Montgomery County, where this case was tried, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*