## DUFF v. UNITED STATES (two cases).

### Nos. 5772, 5773.

United States Court of Appeals
Fourth Circuit.

Jan. 3, 1949.

Morris Rosenberg, of Baltimore, Md. (Robert H. Archer, Jr., of Baltimore, Md., on the brief), for appellants.

James B. Murphy, Asst. U. S. Atty., of Baltimore, Md. (Bernard J. Flynn, U. S. Atty., of Baltimore, Md., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

These companion cases were brought under the Federal Tort Claims Act, 28 U.S. C.A. § 921 et seq.,[1] one by a 14 year old boy, by his father and next friend, for personal injuries caused by a pistol wound inflicted accidentally through the negligence of Herbert S. Priddy, a member of the U. S. Navy, and the other by the father of the boy for the loss of services and the cost of medical care and treatment of his son. The accident occurred on the grounds of the Bainbridge Naval Training Center adjacent to the town of Port Deposit, Maryland, a United States reservation for the training of young men for service in the Navy. The reservation included 1100 acres of land and was occupied by 20,000 people, including 15,000 naval recruits and a household force of 2500 under a Commandant. It is conceded that at the time the injured boy was hurt he was a trespasser, or at most a licensee upon the premises. The District Judge rendered a verdict for the United States in both cases since he was of the opinion that the circumstances under which the accident occurred gave rise to no liability on the part of the United States under the law of Maryland which governs the cases by virtue of the express terms of Section 410(a), 28 U.S.C.A. § 931(a) [now § 1346], of the statute. State of Maryland v. United States, 4 Cir., 165 F.2d 869, 1 A. L.R.2d 213.

The father of the boy was a civilian employee at the training station and the family lived in Port Deposit in a house whose grounds ran to a wire fence which enclosed the reservation at a level 500 feet above the town. A winding stairway led from the town to a gate in the fence and inside, near the gate, was a sentry box about 4 feet square which was used to house a telephone and to protect the guard on duty in bad weather. The townspeople customarily used this gate to gain access to public busses, and boys from the town, including the plaintiff and his brother, were allowed to enter the gate in order to use the football field, to visit the motion picture theater, to use the swimming pool, and to make purchases at the Hobby Shop, all located on the reservation. On the day of the accident, in the evening, the minor plaintiff carried some supper from his home to a friendly seaman on guard at the gate, and remained with him until about 8:45 P.M. Later the boy got some cake for seaman Priddy and walked with him while he made his rounds as an armed guard. Noticing some prowlers in the woods, Priddy put a cartridge clip in his pistol and injected a shell therefrom into the firing chamber so that it might be fired if necessary. When they returned to the gate Priddy decided to telephone the officer of the watch and entered the sentry box for the purpose. At that time the boy was in the box and Priddy, realizing the danger of carrying the pistol with a live cartridge in the firing

[1] 1948 Judicial Code, 28 U.S.C.A. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680.

chamber, attempted to unload it. In doing so he accidentally discharged the weapon and the boy was shot in the leg and seriously injured.

Priddy had had no experience with an automatic pistol before entering the Navy, and he was given no instructions as to loading or unloading such a weapon after he became a member of the armed forces other than the direction never to load or unload it in a building or immediately outside. He had never seen the weapon unloaded with a live cartridge in the firing chamber. However, he had seen other men insert and remove the cartridge clip from the stock of the weapon a number of times and had done so himself, and on the evening of the accident, he had inserted a live shell into the firing chamber without difficulty.

The District Judge made the following finding, which is supported by the evidence, as to Priddy's intention and behavior at the moment that the accident occurred:

" * * * Priddy had never had occasion to actually fire the pistol nor had he ever actually before had occasion to unload the pistol with a bullet in the firing chamber. When the pistol in his hands was accidentally discharged and Duff was shot, Priddy had no intention of firing the pistol but only of unloading it. He was unable to describe just exactly what he had done in the operation of attempting to unload it because, as he expressed it, 'it all happened so quickly.' It was a pure accident so far as he was concerned and the discharge of the pistol was a great surprise to him. He was quite unconscious of any thought that in unloading the pistol it would likely or possibly be discharged and do himself or anyone else any harm. I find that his action in the matter and the resulting damage to young Duff was neither wilful or wanton or reckless on Priddy's part."

The plaintiffs advance the contention that the defendant should be held liable for the injury on the ground that the owner of land owes the duty to a licensee on the premises to exercise ordinary care to avoid injury to the licensee who the owner knows or by the exercise of ordinary care should know is in a position of peril. This is substantially the rule laid down in many jurisdictions with respect to the liabilities of possessors of land to trespassers as set out in 2 Restatement of Torts, §§ 333-338. The Restatement adopts the view (p. 1291), "that a possessor of land owes the same duty of careful action toward a known trespasser or gratuitous licensee as he would owe had the same situation arisen in a place in which both he and the trespasser or licensee had an equal right or privilege * * * to be." That rule, however, is not recognized by the Maryland courts. It was expressly repudiated in Jackson v. Pennsylvania R. Co., 176 Md. 1, 11, 3 A.2d 719, 724, 120 A.L.R. 1068, where the court said: "The Restatement of the Law of Torts, vol. 2, sec. 334, imposes a greater degree of care upon the owner than is enforced by the decisions of this Court."

In Maryland, the duty of the possessor to use care to avoid injury to a trespasser or licensee upon his land does not arise until he has actual knowledge that the other is in peril; and if he fails under such circumstances to exercise the care of a reasonably prudent man he is said to act with reckless disregard of the safety of others and his action is described as wilful or wanton misconduct.[1] The Maryland rule was carefully considered and applied in Jackson v. Pennsylvania R. Co. supra, where the plaintiff attempted to cross railroad tracks upon a path habitually used by the public, and was struck by a backing train which failed to give notice of its approach although for a long time previously trains in like situation had been accustomed to do so. In denying liability the court said:

" * * * By the clear and consistent decisions of this Court he was a trespasser or at most a bare licensee and the frequency of his trespass or use and of that of others did not impose any greater duty than that due to a bare licensee. It is so held in

---

[1] The Restatement of Torts, vol. 2, §§ 500 to 503, refers to and attempts to classify the many jurisdictions in the United States where a possessor of land is liable to a trespasser or licensee only if he has been guilty of "wanton, wilful or reckless" misconduct toward the trespasser or licensee.

Baltimore & O. R. Co. v. Walsh, 142 Md. 230, 242, 120 A. 715. The duty did not begin until the operators of the engine and tender knew of the plaintiff's presence on the track. After such knowledge, the operators were bound to use the care and diligence of ordinarily prudent men in similar circumstances to prevent an injury to the plaintiff. Supra, and Anderson v. Baltimore & O. R. Co., 144 Md. 571, 573, 125 A. 393. Hence, under the allegations of the declaration in this case no duty of the defendant and its servants to the plaintiff could arise until the defendant's servants had knowledge that the plaintiff was in a position of peril in time for them to prevent an injury by the exercise of due care. This knowledge is the gist of the plaintiff's right of action." 176 Md. at pages 9, 10, 3 A.2d at page 723.

" * * * and, as in the case of the trespasser, the licensor, who is aware that a licensee is actually there is bound to take reasonable care to prevent injury to him after knowledge of the impending danger; and not to inflict wilful or wanton injury." 176 Md. at page 11, 3 A.2d at page 724.

The rule was again stated as follows in State v. Baltimore & O. R. Co., 144 Md. 571, 573, 125 A. 393, 394, in which the equitable plaintiffs were the dependents of a man killed while walking on the defendant's railroad track.

" * * * In order that his dependents might recover damages from the defendant on account of his death, it was necessary for them to prove that the operators of the train knew of his presence on the track in time to have obviated the accident by proper care and effort. Their knowledge of his hazardous situation, and their opportunity and failure, with such knowledge, to act efficiently for his protection, were facts essential to be proved as the basis of recovery. This rule of law is definitely settled and is not questioned."

See also Western Maryland R. Co. v Kehoe, 83 Md. 434, 452, 35 A. 90.[2]

The same rule is applied to the converse situation where the owner fails to exercise ordinary care to avoid injury to a trespasser or licensee of whose peril the owner is aware. See Baltimore & O. R. Co. v. Harris, 121 Md. 254, 88 A. 282, and Carr v. United Rys. & Elec. Co., 135 Md. 306, 108 A. 872. In both of these cases the defendant was held liable to a trespasser or licensee because it was shown that the defendant had knowledge of the position of peril in which the injured party was situated, and hence was bound to exercise reasonable care to avoid the injury. In the latter case the court said (135 Md. at page 311, 108 A. at page 874):

" * * * 'As no one has a right to be negligently or wrongfully on a railroad track, the company owes no duty to a person so situated to anticipate that he will be in such a position; but if its servants see him in a place of peril, though he be wrongfully or negligently there, then the duty arises to avoid injuring him if possible. The duty which the company owes to such a person originates only when the perilous position is seen or known by the company's servants. When, therefore, a plaintiff is wrongfully or negligently on the tracks of a railroad in a position of peril, as the prayer we are considering assumes was the fact in the case at bar, the duty of the company to use due care to avoid injuring him arises at the moment the servants of the company see and become aware of his peril; and hence, to sustain this branch of the prayer, it was essential for him to show, first, that the company's servants had knowledge of his peril.' "

While these decisions relate particularly to trespassers or licensees who expose themselves to the dangers which lurk in the use of a railroad's right of way, the rule is not confined to such a situation. It has been applied to a licensee inside the defendant's transit vehicle, and has been given effect even though the conduct complained of consisted of positive acts rather than passive negligence on the defendant's part.

---

[2] Maryland's divergence from the rule of other jurisdictions is disclosed in the note to McCarthy v. Boston & Maine R. Co., 319 Mass. 470, 66 N.E.2d 561, 167 A.L.R. 1250, 1288, 1326.

Carr v. United Rys. & Elec. Co., supra; Rosenkovitz v. United Rys. & Elec. Co., 108 Md. 306, 70 A. 108; cf. Burke v. Maryland D. & Va. Ry., 134 Md. 156, 106 A. 353.

The same conservatism is noted in the Maryland decisions which relate to the liability of owners for injuries arising merely from the condition of their land. Thus, the courts of the state do not apply the doctrine of attractive nuisance to artificial conditions held dangerous to trespassing children that is well established elsewhere. 2 Restatement of Torts, § 339. The Maryland rule in this respect is set out in State v. Baltimore Fidelity Warehouse Co., 176 Md. 341, 350, 4 A.2d 739, 743, where the court, in referring to earlier cases, said:

"In these instances children were either trespassers or mere licensees, and, therefore, no recovery was permitted. In the case of State [use of Lorenz] v. Machen, 164 Md. 579, 165 A. 695, the question was lately considered, and the Court again distinguished between the children who are on the premises of the occupier with or without permission and those who are there by express or implied invitation. Whether the child be there as a trespasser or by mere permission, but not as an invitee, he must take the premises as he finds them, and the owner or occupant undertakes no duty to him except that after becoming aware of his presence he must not injure him wilfully or, after notice of the child's peril, entrap him by a concealed danger known to the occupier but unknown and not obvious and expectable to an inexperienced child."

See also, Brinkmeyer v. United Iron & Metal Co., 168 Md. 149, 177 A. 171; State v. Longeley, 161 Md. 563, 158 A. 6; State v. Machen, 164 Md. 579, 165 A. 695.

■ Generally speaking, the owner of land in Maryland owes no duty with respect to the condition of his land to a trespasser, or even to a licensee, whose presence upon the land is known to him, except to abstain from wilful or wanton misconduct. Benson v. Baltimore Traction Co., 77 Md. 535, 26 A. 973, 20 L.R.A. 714, 39 Am.St.Rep. 436. The owner owes no duty to the trespasser or licensee to keep the premises safe or to anticipate his presence and warn him, and the trespasser or licensee acquires no right of recovery except in the case of wilful injury. Gordon Sleeprite Corp. v. Waters, 165 Md. 354, 168 A. 846; Pellicot v. Keene, 181 Md. 135, 28 A.2d 826; Steinwedel v. Hilbert, 149 Md. 121, 131 A. 44.

■ The only qualification upon this rule arises where the owner has acquiesced in the use of the premises by a licensee and has created a new and abnormal condition which increases the danger beyond that which the licensee has reason to regard as naturally attaching to his habitual user. Myszkiewicz v. Lord Baltimore Filling Stations, 168 Md. 642, 178 A. 856. In such case the owner must give notice of the change; or, as stated in other cases, the landowner must not entrap the licensee or change the premises so as to create new dangers not apparent without giving warning. Brinkmeyer v. United Iron & Metal Co., 168 Md. 149, 177 A. 171; Susquehanna Power Co. v. Jeffress, 159 Md. 465, 150 A. 788, 71 A.L.R. 1198; State v. Machen, 164 Md. 579, 165 A. 695; Maenner v. Carroll, 46 Md. 193, 218, 222.

It is plain from this line of decisions that the trespasser or licensee in Maryland must prove something more than ordinary neglect on the part of the owner to entitle him to recover. There must be conduct which manifests a wanton and reckless disregard of the safety of others. There must be at least the flavour of a wilful, intentional wrong. In many, perhaps the majority of jurisdictions, this rule is looked upon as too severe and it is suggested that it is more consonant with humanity and with the uniform development of the law of torts to impose upon the property owner in all cases, where the presence of the trespasser is known, the duty to exercise a degree of care for his safety, such as a reasonable man would exercise under like circumstances; and it is said that this view does not unduly favor the intruder since the circumstances under which he is found upon the premises form part of the environment by which the judgment and conduct of the reasonable man are determined, and that whatever blame attaches to the trespasser, the owner's duty is merely to take the last clear chance to avoid unnecessary injury to his fellow man. See Peaslee, Duty to Seen Trespassers, 27 Harvard Law Review 403.

However persuasive this argument may appear to be, it has not been accepted in this state. Although Maryland, in applying the doctrine of the last clear chance in negligence cases, holds that constructive notice of the plaintiff's peril is sufficient to establish the defendant's liability, State v. Washington B. & A. Elec. R. Co., 149 Md. 443, 131 A. 822, it departs from this position when the plaintiff is a trespasser or licensee, and requires actual notice of the plaintiff's danger. Hence we are of opinion that the judgment of the District Court should be affirmed for we are bound by the Maryland law.[3] The Judge made the finding that Priddy's conduct was not wilful or wanton, or, to use the language of the Court of Appeals of Maryland, "characterized by extreme recklessness and utter disregard for the rights of others";[4] that he was not toying or experimenting with the pistol, or intentionally pointing it at the boy, but on the contrary was attempting to promote safety rather than intentionally creating danger. The evidence gives support to this finding. The unloading of a pistol, while requiring care, is not necessarily a dangerous operation, and Priddy had no idea that his action was likely to injure the boy or himself. "Conduct to be in reckless disregard of the safety of others must not only be done with knowledge of the risk which is involved in it but with a perception of the extent thereof and a realization that the conduct in question involves a high degree of probability that substantial harm will result from it." 2 Restatement of Torts, § 336, Comment e.

Affirmed.

PARKER, Chief Judge (dissenting).

It seems clear to me that one handling a dangerous weapon in the known presence of another owes him the duty of using ordinary care; and I do not understand that this duty ceases to exist merely because the person handling the weapon is on his own premises and the other is a licensee or even a trespasser. This is in accord with the clear current of authority and the law as stated in the A. L. I. Restatement of Torts, secs. 336 and 341;[1] and I do not find that any different rule is established in Maryland. Certainly Jackson v. Pennsylvania R. Co., 176 Md. 1, 3 A.2d 719, 120 A.L.R. 1068, is not to the contrary, but holds merely that the duty does not exist where the presence of the licensee or trespasser is not known; and the section of the Restatement which the Court refers to in that case as imposing a greater degree of care than the Maryland law is neither sec. 336 nor sec. 341, but sec-

---

[3] It is our duty under the statute, 28 U.S.C.A. § 931, to decide the case "in accordance with the law of the place where the act or omission occurred," that is, in accordance with the decisions of the Court of Appeals of Maryland; and we have no authority to mould the law so that it may conform to the law of other jurisdictions. The effort put forth in this case to show that in Maryland the known presence of a licensee gives rise to a duty on the part of a possessor of land to exercise due care for the licensee's safety must fail because the proposition is plainly at variance with the cases cited to support it. It is true that the decisions indicate that "presence" is enough under circumstances where presence involves obvious peril; but the language of the decisions makes it abundantly clear that "peril" and not "presence" is the essential factor. Thus in Jackson v. Pennsylvania R. Co., 176 Md. 1, 9, 3 A.2d 719, 723, 120 A.L.R. 1068, the court said that no duty of the defendant could arise until its servants "had knowledge that the plaintiff was in a position of peril"; and in State v. Baltimore & Ohio R. Co., 144 Md. 571, 573, 125 A. 393, 394, that "their knowledge of his hazardous situation, and their opportunity and failure, with such knowledge, to act efficiently for his protection, were facts essential to be proved as the basis of recovery"; and in Carr v. United Rys. & Elec. Co., 135 Md. 306, 311, 108 A. 872, that "the duty which the company owes to such a person originates only when the perilous position is seen or known by the company's servants"; and in Baltimore & Ohio R. Co. v. Harris, 121 Md. 254, 269, 88 A. 282, 287, that "if they knew * * * that she was in a position of peril * * * they were bound to exercise reasonable care to avoid injuring her."

[4] Dennis v. Baltimore Transit Co., Md., 56 A.2d 813, 817; Baltimore Transit Co. v. Faulkner, 179 Md. 598, 20 A.2d 485; Harris v. R. P. Dobson, 150 Md. 71, 132 A. 374.

[1] See also 45 C.J. 803–804; 38 Am. Jur. p. 103; note 49 A.L.R. 778.

tion 334, which lays down the rule of reasonable care for the safety of trespassers whose presence the possessor of land might reasonably anticipate. The duty to use due care for the safety of one whose presence is known is a very different matter from this; and the distinction was clearly drawn in State for the Use of Anderson v. Baltimore & O. R. Co., 144 Md. 571, 125 A. 393, 394, where the Court used the following language:

"In using as a path one of the railroad tracks on the defendant's private right of way, the decedent placed himself in the position of a trespasser. It was, nevertheless, the duty of those in charge of the train to exercise due care, *after becoming aware of his presence,* to avoid causing him injury. But they were not required to anticipate that he would be in such a place of danger." (Italics supplied.)

To hold that the fundamental human duty to exercise ordinary care for the safety of a fellow human being ceases to exist merely because one person is on his own premises and the other a licensee seems to me to exalt the rights of property above the claims of humanity. I do not understand that the Maryland courts have so declared the law, and, as I read their decisions, the clear indication of these is to the contrary. In addition to what is said in State for the Use of Anderson v. Baltimore & O. R. Co., supra, account should be taken of the language in the opinion in the Jackson case, supra, where it is said:

"The duty did not begin until the operators of the engine and tender *knew of the plaintiff's presence on the track.* After *such knowledge,* the operators were bound to use the care and diligence of ordinarily prudent men in similar circumstances to prevent an injury to the plaintiff." (Italics supplied.)

In Carr v. United Railways & Electric Co. of Baltimore, 135 Md. 307, 108 A. 872, plaintiff was a licensee who was allowed to ride across a bridge on the rear platform of an electric car outside the safety bar. He was thrown from the platform by the speed of the car. The conductor knew of his position but nevertheless caused the car to speed up after crossing the bridge. It was held that it was the duty of the conductor to use ordinary care for the safety of plaintiff "after he became aware of his dangerous situation". As the situation of plaintiff became dangerous only as a result of the speeding up of the car, this was tantamount to saying that when the conductor was aware of plaintiff's presence it was his duty to use due care not to make his situation dangerous. And certainly it would seem that, if there is a duty to use ordinary care not to injure a licensee seen to be in a position of peril, a fortiori there is a duty to use such care not to create the peril for him if his presence and position are known.

Another Maryland case very much in point is Baltimore & O. R. Co. v. Harris, 121 Md. 254, 88 A. 282. There the decision proceeded on the assumption that the injured party, a woman, was a mere licensee, although there were facts from which she might have been held an invitee. She was injured as the result of the negligent blowing of the whistle of defendant's locomotive which frightened her and caused her to stumble and fall. Judgment for plaintiff was sustained on the ground of failure of defendant to use ordinary care; and while the opinion refers to plaintiff as being in a position of peril, it is perfectly clear that the only peril was that created by the negligent act which caused the injury. This case as well as the Carr case, therefore, supports the rule that there is liability for failure to use due care for the safety of a licensee whose presence is known; and, while in both cases it is said that the duty to use due care arises with respect to one seen to be in a position of peril, liability was sustained in both cases because the failure to use due care resulted in the peril which caused the injury. It is not an unfair statement of the doctrine of these cases to say that they hold that when the presence of the licensee is known, the duty arises to use due care not to create a peril which may cause him injury. This brings the rule of Maryland with respect to a licensee whose presence is known into harmony with the rule of the Restatement and the humane rule followed in most other jurisdictions.

It should be noted that, in both of the Maryland cases last cited, liability was im-

posed for failure to use ordinary care for the safety of the licensee whose presence was known and not because of wanton or wilful conduct. In the Harris case the court expressly approved the refusal of instructions making the test of liability the wilful blowing of the whistle to frighten plaintiff or reckless disregard of the effect of that action upon her. It cannot be said, therefore, that the failure to use due care for the safety of one seen to be in a position of peril is tantamount under Maryland law to wanton or wilful conduct.

In Maryland a trespasser or licensee whose presence is known may invoke the last clear chance doctrine and the test of liability in such case is not wilful or wanton injury but failure to use ordinary care. State for use of Anderson v. Baltimore & O. R. Co., supra; Baltimore & O. R. Co. v. State, 36 Md. 366. If due care must be exercised not to injure a licensee who is seen to be in a position of peril, it would be anomalous to say that when his presence is known there is no duty to use due care not to imperil him; and particularly is this so when use is being made of a dangerous instrumentality which, if not carefully used, may cause him serious injury. When properly interpreted, these last clear chance cases support the rule requiring the use of due care for the safety of a licensee or trespasser whose presence is known; since it is elementary that "the doctrine of the last clear chance is not properly invoked to raise a duty upon the part of the defendant, or to charge him with negligence". 38 Am. Jur. 903. It applies only where both parties are negligent and the question is one of determining whose negligence is to be deemed the proximate cause of the injury. State v. Glen Echo Park Co., 137 Md. 529,

113 A. 85. The negligence held, under these cases, to impose liability on the defendant for injury to a licensee is failure to use ordinary care. Of especial interest in this connection is State for use of Anderson v. Baltimore & O. R. Co., supra, a case where a trespasser was killed while walking on a railroad track. The Court said, "In order that his dependents might recover damages from the defendant on account of his death, it was necessary for them to prove that the operators of the train knew of his presence on the track in time to have obviated the accident by proper care and effort". The fact giving rise to the duty to use due care was the known presence of the trespasser were he might be injured if due care was not taken for his protection, not the fact that injury was imminent.

On the basis of the cases to which I have referred, I think that, under the principles of the common law as declared by the Maryland courts, one handling or using a dangerous weapon or instrumentality owes to a bystander whose presence is known, even though the latter be a mere licensee, the duty of using ordinary care not to injure him. I am loath to believe that the courts of Maryland refuse to accept a rule so obviously grounded in reason and common sense and proper regard for human life and safety and so clearly in accord with the current or authority elsewhere. I realize that they refuse to accept the rule of some courts as to the duty to anticipate the presence of trespassers; but this is a very different matter from holding that there is no duty to exercise ordinary care for the safety of one whose presence is known and who may be injured by the careless use of a dangerous weapon or instrumentality.