## COMSTOCK v. UNITED STATES (Merritt-Chapman & Scott, third-party defendant).

### Civil No. 5779.

United States District Court
D. Maryland.

July 8, 1953.

Cross & Shriver, Baltimore, Md., J. Nicholas Shriver, Jr., and Charles B. Reeves, Jr., Baltimore, Md., for Elmer E. Comstock and U. S. Services Automobile Ass'n.

Piper & Marbury, Baltimore, Md., Frank T. Gray, of Baltimore, Md., for Merritt-Chapman & Scott Corp.

James B. Murphy, Asst. U. S. Atty., Baltimore, Md., for the United States.

COLEMAN, Chief Judge.

This is a suit under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), against the United States as owner of certain property on which plaintiff's car was damaged, due to the alleged negligence of employees of the United States in failing properly to maintain the property, and to warn persons permitted to use it of its dangerous condition. The suit was originally also brought against Merritt-Chapman & Scott Corporation, lessee of the property where the damage occurred. This corporation was dismissed for lack of jurisdictional amount in suit, but thereafter upon petition of the Government, this lessee was permitted to be impleaded as a third-party defendant, the Government contending that the lessee, by the terms of the lease, was responsible to the Government for the amount of any judgment the plaintiff might obtain against it in the present suit.

The following facts were established by the weight of the credible evidence. About midnight on the evening of October 13, 1950, Thomas E. Comstock, son of the plaintiff Elmer E. Comstock, was driving plaintiff's automobile with plaintiff's permission on Government property known as Hawkins Point Pier Military Reservation, at Thom's Cove, on the Patapsco River, such use by the son of his father's car being covered under a policy of collision insurance issued by United Services Automobile Association, for whose joint use the suit is brought. According to the son's testimony, he had gone there to show a girl

friend the Army transports then at a Government pier and upon returning, he took a short cut across an asphalt surfaced area when his car struck a sunken catch basin or drain, the top of which had fallen in. At the time, Comstock was not traveling over a defined road, but was crossing this large asphalt surfaced parking and unloading area, near the Patapsco River, which had been used for storage of war materiél, but over which, for some time past, the general public had been accustomed to drive, and at times park their cars, without objection on the Government's part. No light or warning of any other kind had ever been placed by this catch-basin. There is no credible evidence that the plaintiff's son was lacking in due care at the time of the accident. As a result of the accident, the plaintiff's car was damaged and repair bills were incurred in the amount of $362.26 of which $50.00 was paid by the plaintiff and the balance ($312.26) was paid by the equitable plaintiff, United Services Automobile Association, under a policy of collision insurance.

The plaintiff asserts that his son was an invitee on the Government premises because the Government had tacitly acquiesced in the use of this asphalt surfaced area by the general public in automobiles and that therefore the Government was under a duty to exercise reasonable care to maintain this area in a safe condition for motors. To support his position plaintiff relies largely on Burke v. Maryland, Delaware & Virginia Ry. Co., 134 Md. 156, 106 A. 353, and Sheridan v. Baltimore and Ohio Railroad Company, 101 Md. 50, 60 A. 280.

In the Burke case the plaintiff was injured when one of the defendant's express trucks which was being unloaded from defendant's steamer ran into a gate on the pier where plaintiff was standing, striking it with such force that it fell upon plaintiff. The court held that on these facts it was a jury question whether plaintiff's injury was caused by defendant's negligence.

In considering whether the plaintiff was an invitee or a trespasser, the Maryland Court of Appeals analyzed the theories of (1) implied invitation from benefit and (2) implied invitation from acquiescence, and

said, 134 Md. at pages 164–165, 106 A. at page 356: "Even if we assume that there is not sufficient evidence in this case of any *benefit* accruing to the defendant to warrant a finding by the jury that excursionists and persons visiting Love Point were invited to fish and crab on the pier, we think there was ample evidence to justify the finding of an implied invitation from the *acquiescence* of the defendant in such use of the pier. Moreover, at the time of the accident, the plaintiff was not fishing or crabbing, but, according to his testimony, was on his way to the store on the defendant's boat, to purchase some of the things it offered for sale, and stopped at the point where he was standing at the time of the accident to wait until the passengers and freight were discharged. *He could not have been regarded as a trespasser or mere licensee in the store of the defendant, and there would be no greater reason for holding him to be a trespasser or licensee in going on the pier to visit the store."* (Emphasis supplied.)

From the above quoted language of the court in the Burke case it will readily be seen that the facts there were quite different from those in the present case. Here, there is no evidence of implied invitation or of a business attraction, as in the Burke case.

In the Sheridan case, plaintiff found his way across a certain street in Baltimore blocked by one of defendant's trains. It had long been customary for persons obliged to cross defendant's tracks thus blocked to crawl over or under the cars. This custom was acquiesced in by the defendant. The plaintiff, with the express acquiescence of one of defendant's brakemen, attempted to go between two freight cars by getting on the bumpers, when the train started without any warning and plaintiff's foot was crushed between the bumpers. The Maryland Court of Appeals held that under the special circumstances involved the plaintiff was not a mere trespasser, and also that the question of whether the plaintiff had been contributorily negligent was one of fact, which should have been submitted to the jury. The Court said, 101 Md. at pages 57–58, 60 A. at page 281:

"The appellant was not a passenger, and was therefore not entitled to the exercise by the appellee of the highest degree of care and diligence in his behalf. Nor was he a mere trespasser, to whom the appellee owed only the duty of abstaining from wantonly and willfully injuring him. If we admit that it was beyond the scope of the brakeman's employment to bind the appellee by the express invitation to cross the train which he gave to the appellant at the time of the accident, we cannot close our eyes to the fact that for many years the appellee had acquiesced, without objection, in the habit of the men working in the factories in that vicinity of crossing between or under its stalled trains, which impeded their passage to and from their daily labor. Under somewhat similar circumstances we said in Siacik's Adm'r v. Northern Central R. R. Co., 92 Md. [213] 219, 48 A. 149, that the railroad company's 'servants might have known, from experience and ordinary observation of the blockading of streets by railway cars, that some people would likely climb over, between, or, if small enough, under the cars, in order to cross the street.' A jury might conclude that this conduct of the appellee in the present case, in so long permitting the crossing of its stalled trains, amounted to an implied assent or invitation to the appellant to cross between the cars of the train which on the day of the accident for so long time closed the passage from his home to his place of labor. If so, the appellee was bound to exercise reasonable care to protect him in accomplishing the crossing which he was, with its consent, attempting to make. Swift v. Staten Island R. T. R. Co., 123 N.Y. [645] 650, 25 N.E. 378; Taylor v. Delaware & Hudson Canal Co., 113 Pa. 162, 8 A. 43; Chicago, B. & Q. R. Co. v. Murowski, 179 Ill. 77, 53 N.E. 572; Clampit v. Chicago, St. P. & K. C. Ry. Co., 84 Iowa 71, 50 N.W. 673."

The fact that the defendant had actual knowledge of and, as the Court said, consented to the custom of the workmen in crossing over its stalled trains for many years, in addition to the fact that the accident happened on an established route between the plaintiff's home and his regular place of work, clearly distinguish the Sheridan case from the one now before us.

In the present case, the Government contends that the plaintiff's son was a trespasser, or at least in a no more favored status than that of a licensee on the Government's premises at the time of the accident, and that therefore the Government was under no duty towards him except to refrain from willfully injuring him. Of the numerous cases cited in support of its position, those most relied upon by the Government are Duff v. United States of America, 4 Cir., 171 F.2d 846; Jackson v. Pennsylvania R. R. Co., 176 Md. 1, 3 A.2d 719, 120 A.L.R. 1068 and Maenner v. Carroll, 46 Md. 193.

In the Duff case the plaintiff, a fourteen year old boy, son of a civilian employee at the Naval Training Station, Bainbridge, Maryland, and conceded to be a trespasser or at most a licensee, was accidentally shot and seriously injured by an armed guard there while the latter was attempting to unload his automatic pistol in his sentry box where the boy had gone, as he and other boys in the neighborhood were accustomed to do with the guard's acquiescence, the boy having just previously walked with the guard as he made his round. The Court of Appeals, Fourth Circuit in affirming a judgment for the Government by this Court (Judge Chesnut) said, 171 F.2d at page 848: "The plaintiffs advance the contention that the defendant should be held liable for the injury on the ground that the owner of land owes the duty to a licensee on the premises to exercise ordinary care to avoid injury to the licensee who the owner knows or by the exercise of ordinary care should know is in a position of peril. This is substantially the rule laid down in many jurisdictions with respect to the liabilities of possessors of land to trespassers as set out in 2 Restatement of Torts, §§ 333–338. The Restatement adopts the view (p. 1291), 'that a possessor of land owes the same duty of careful action toward a known trespasser or gratuitous licensee as he would owe had the same situation arisen in a place in which both he and the trespasser or licensee had an equal right or privilege * * * to be.' That rule, however, is not recognized by the Maryland courts. It was

expressly repudiated in Jackson v. Pennsylvania R. Co., 176 Md. 1, 11, 3 A.2d 719, 724, 120 A.L.R. 1068, where the court said: 'The Restatement of the Law of Torts, vol. 2, sec. 334, imposes a greater degree of care upon the owner than is enforced by the decisions of this Court.'

"In Maryland, the duty of the possessor to use care to avoid injury to a trespasser or licensee upon his land does not arise until he has actual knowledge that the other is in peril; and if he fails under such circumstances to exercise the care of a reasonably prudent man he is said to act with reckless disregard of the safety of others and his action is described as wilful or wanton misconduct. The Maryland rule was carefully considered and applied in Jackson v. Pennsylvania R. Co. supra, where the plaintiff attempted to cross railroad tracks upon a path habitually used by the public and was struck by a backing train which failed to give notice of its approach although for a long time previously trains in like situation had been accustomed to do so." The Court then quoted from a number of Maryland railroad injury cases, and continuing, 171 F.2d 849–850, said: "While these decisions relate particularly to trespassers or licensees who expose themselves to the dangers which lurk in the use of a railroad's right of way, the rule is not confined to such a situation. It has been applied to a licensee inside the defendant's transit vehicle, and has been given effect even though the conduct complained of consisted of positive acts rather than passive negligence on the defendant's part. Carr v. United Rys. & Electric Co., supra [135 Md. 307, 108 A. 872]; Rosenkovitz v. United Rys. & Electric Co., 108 Md. 306, 70 A. 108; cf. Burke v. Maryland, Delaware & Virginia Ry. Co., 134 Md. 156, 106 A. 353.

"The same conservatism is noted in the Maryland decisions which relate to the liability of owners for injuries arising merely from the condition of their land. Thus, the courts of the state do not apply the doctrine of attractive nuisance to artificial conditions held dangerous to trespassing children that is well established elsewhere. 2 Restatement of Torts, § 339."

Summing up the Maryland law, in conclusion the Court said, 171 F.2d 850–851: "*It is plain from this line of decisions that the trespasser or licensee in Maryland must prove something more than ordinary neglect on the part of the owner to entitle him to recover. There must be conduct which manifests a wanton and reckless disregard of the safety of others. There must be at least the flavour of a wilful, intentional wrong.* In many, perhaps the majority of jurisdictions, this rule is looked upon as too severe and it is suggested that it is more consonant with humanity and with the uniform development of the law of torts to impose upon the property owner in all cases, where the presence of the trespasser is known, the duty to exercise a degree of care for his safety, such as a reasonable man would exercise under like circumstances; and it is said that this view does not unduly favor the intruder since the circumstances under which he is found upon the premises form part of the environment by which the judgment and conduct of the reasonable man are determined, and that whatever blame attaches to the trespasser, the owner's duty is merely to take the last clear chance to avoid unnecessary injury to his fellow man. See Peaslee, Duty to Seen Trespassers, 27 Harvard Law Review 403. However persuasive this argument may appear to be, it has not been accepted in this state. *Although Maryland, in applying the doctrine of the last clear chance in negligence cases, holds that constructive notice of the plaintiff's peril is sufficient to establish the defendant's liability,* State for Use of Kolish v. Washington, B. & A. Electric R. Co., 149 Md. 443, 131 A. 822, *it departs from this position when the plaintiff is a trespasser or licensee, and requires actual notice of the plaintiff's danger. Hence we are of opinion that the judgment of the District Court should be affirmed for we are bound by the Maryland law.*" (Emphasis supplied.)

In Jackson v. Pennsylvania R. R. Co., supra, another case strongly relied upon by Government counsel in the present case, the plaintiff was injured while using a foot path across the tracks of the defendant

railroad. This path was not a public way, but the defendant had long acquiesced in its use as a pathway across its tracks by the public generally. The Maryland Court of Appeals refused to allow recovery, rejecting the contention that acquiescence by the railroad in the use of its footpath amounted to such an invitation as would render the railroad liable for injury to the plaintiff. The Court said, 176 Md. at pages 5–6, 3 A.2d at page 721: "It is plain from these allegations that the footpath mentioned is not a public way but one in whose use as a pathway across its railway tracks the defendant has acquiesced. Some courts hold that if the railway company licenses or acquiesces in the use of its tracks or premises by others, it must exercise reasonable care not only to avoid injuring these users after they are discovered to be in danger but also to keep a careful lookout to discover and avoid injury to all who may be expected to be upon their right of way or premises. It is this doctrine which the plaintiff in the action on this appeal invokes and asks to have enforced. There are weighty reasons in support of the doctrine, but the more cogent reasons are opposed. The doctrine is impracticable and not in harmony with the principles of law which control such cases. * * *." Continuing, the Court said, 176 Md. at page 9, 3 A.2d at page 723: "In the present case, *the plaintiff did not go upon the defendant's right of way by an express nor implied invitation. He had no business of any kind with the carrier, and was engaged in appropriating for his own convenience private property whose railway tracks and their use were a danger signal to him and a warning of the perils he might encounter. By the clear and consistent decisions of this Court he was a trespasser or at most a bare licensee and the frequency of his trespass or use and of that of others did not impose any greater duty than that due to a bare licensee. * * **

*"The tacit acquiescence in the habitual user of a foot-path by persons coming on the railway property without leave may, if sufficiently prolonged, amount to a user by permission in a particular manner, but this would simply make the trespasser a mere* or bare licensee, who acquires no right, and has simply become entitled to no more than a permission to use the subject of the license as he finds it with all its concomitant conditions and perils. As heretofore observed, the duty of the owner of the property to the bare licensee with respect to the licensee's use of the property is not covertly to alter the property so as to create a peril which is not obvious and expectable to the user; and, as in the case of the trespasser, the licensor, who is aware that a licensee is actually there is bound to take reasonable care to prevent injury to him after knowledge of the impending danger; and not to inflict wilful or wanton injury.* 23 Halsbury's Laws of England, secs. 859, 860, pp. 609, 610; Elliott on Railroads (3rd ed.) sec. 1789, p. 834; 52 C.J., sec. 1772(d), pp. 177, 178. *It does not appear that the defendant was aware that the plaintiff was using the pathway on the night of the injury. There is alleged no change in the premises and its use.* (Emphasis supplied.)

"The declaration, therefore, fails to disclose any breach of duty which was owed by the defendant to the plaintiff, and this defect makes the declaration bad on demurrer. Brinkmeyer v. United Iron & Metal Co., 168 Md. 149, 177 A. 171; State [to Use of Lorenz] v. Machen, 164 Md. 579, 581–586, 165 A. 695; Elliott on Railroads, 3d ed., vol. 5, secs. 2695, 2696.

"The Restatement of the Law of Torts, vol. 2, sec. 334, imposes a greater degree of care upon the owner than is enforced by the decisions of this Court. The quotation in this opinion from Elliott on Railroads, supra, presents the reasons for the position frequently taken by this Court. The use of a private foot-path crossing over a steam railway right of way and its rails and ballasted tracks arising above the level of the surface of the right of way creates a restriction in the operation of the railway which is not conducive to the performance of its function as a public carrier. Acquiescence in such use does not create a right, but a revocable naked gratuitous license which may reasonably be said to be enjoyed according to its kind, subject to the qualification that the licensee accept the permission with its accompanying conditions.

and perils, and with no responsibility on the part of the licensor for the safety of the licensee, which does not grow out of the owner's negligence or that of his servants employed in the use and management of the premises. In other respects, the peril of the customary movement and operation of locomotive engines, cars and trains on the railway tracks, and over the footway habitually used by the licensee and others, at a definite point, without interference and to the knowledge of the owner but with no actual permission, must be held to be assumed by the beneficiary as incident to the permission given. * * *."

In the third decision upon which Government counsel strongly rely, Maenner v. Carroll, supra, as shown by the third count of the declaration, a demurrer to which was sustained, the defendants were owners of a certain unenclosed lot of ground within the City of Baltimore over which persons were in the habit of passing; and the plaintiff, while doing so at night and ignorant of an excavation on it, fell into this excavation and was injured. The Maryland Court of Appeals said, 46 Md. at pages 212–213: "This [the third] count entirely fails to state a sufficient cause of action. To constitute a good cause of action, in a case of this nature, there should be stated a right on the part of the plaintiff, a duty on the part of the defendants in respect to that right, and a breach of that duty by the defendants, whereby the plaintiff has suffered injury. Here there is nothing of the sort shown. *All the facts alleged in this count may be true, and yet the plaintiff would have no right of action against the defendants. The fact that persons were in the habit of passing over the lot, gave to the plaintiff no right to do so; and unless there was such right there was no breach of duty on the part of the defendants in cutting and leaving open the excavation. A party has the right to use his land as he pleases, except as he may be restrained by duty to the public or to private individuals. But any individual who complains of the manner in which a defendant may have used his own land, should show with certainty and precision both the right of the plaintiff and the duty of the defendant,* *and in what manner such right and duty have been violated. This count, as has been perceived, contains no allegation that there was any public way over the lot to entitle the plaintiff to pass over it, nor is there any allegation that the plaintiff, by reason of authority from the defendants, was lawfully or rightfully passing over the lot at the time of the accident. The only fact alleged to confer the right on the plaintiff is that persons were in the habit of passing over the lot, but that this was insufficient to establish a right in the plaintiff is too clear for question. And having no right to be on the lot, according to the facts alleged in this county the injury which the plaintiff suffered by falling into the excavation must be attributed exclusively to his own fault."* (Emphasis supplied.)

It will be seen that in the Maenner case just analyzed, the facts were quite similar to those before us in that people generally were in the habit of passing over the lot where plaintiff was injured. Yet in spite of this, recovery was denied.

Such cases as Dickey v. Hochschild, Kohn & Co., 157 Md. 448, 146 A. 282, are clearly distinguishable. There, the injured party was a business invitee in a store. As respects the contention that no distinction should be made between a property owner's obligation to an implied invitee and to a business invitee, suffice it to say that under the Maryland cases we do not find support for the contention that in the present case the plaintiff's son was an invitee of any sort, but merely a bare licensee. While expressed in numerous decisions, the Maryland doctrine has perhaps been most succinctly stated in the case of State, to Use of Lorenz v. Machen, 164 Md. 579, at page 582, 165 A. 695, at page 696, where the Court said that the owner or occupant of property "undertakes no duty to those visitors who come for their own pleasure or convenience, and not at his invitation or upon inducement, express or implied, from a common advantage, except that, being aware of their presence, he must not injure them willfully or entrap them. 'A licensee must take the property as he finds it, and is entitled only not to be led into danger by "something like fraud." '

Pollack, Torts, (11th Ed.) 554." See also Myszkiewicz v. Lord Baltimore Filling Stations, 168 Md. 642, 178 A. 856; and a review of the Maryland cases in 3 Maryland Law Review 344.

From the aforegoing review of the decisions primarily relied upon by counsel for both sides in the present case, and from our examination of numerous other Maryland decisions, we are satisfied that according to Maryland law, as enunciated by the Maryland Court of Appeals and which must govern us in the present case, although contrary to and more harsh upon the injured party than the doctrine followed in the majority of other States, the present plaintiff is not entitled to recover from the Government or its lessee because (1) plaintiff's son, at the time of the injury to his father's, the plaintiff's, car was not an invitee upon the property of the Government; but (2) he was at most a bare licensee and (3) as such, no duty arose on the part of the Government or its lessee to use care to avoid the injury to the car he was driving by removing or repairing the catch-basin, or placing some warning sign near it, since the Government and its lessee had no *actual* knowledge that plaintiff's car was in peril of running into the catch-basin.